**Thomas Wesley WATERS, alias, Terry Crawford, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45820.**

Court of Criminal Appeals of Texas.

March 7, 1973.

Will Gray, Houston, for appellant.

J. R. Owen, Dist. Atty., Georgetown, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of murder; punishment was assessed at 45 years imprisonment.

By appellant's two grounds of error, he attacks the sufficiency of the evidence and contends that the evidence is insufficient to overcome the exculpatory evidence introduced by the state.

The record reflects that on the morning of March 1, 1971, the body of Mrs. Jodell Gage, the manager of the Trail Motel in Taylor, was found inside her bedroom which adjoined the motel office. An empty cash box had been removed from the office and was on the corner of the bed. The television set was on and there was a meal on the table.

The time of death of the deceased was shown to have been at approximately 8:00

P.M. on February 28, 1971. There were numerous lacerations about her hands; two stab wounds on her upper right arm; and a massive laceration around her neck which, among other things, severed the carotid artery causing her death.

A deputy constable searched the area behind the cabins and found "part of a butcher knife" behind either cabin number 16 or cabin number 17. Type "O" human blood was found on the knife. (The deceased's blood was type "A".)

Texas Ranger Brakefield testified that he talked to the appellant on March 4, 1971, as part of his routine investigation of the killing. He stated that the appellant told him that he first learned about the killing at 9:00 A.M. on March 1st. He talked to the appellant a second time on March 5th and on this occasion appellant told him that "he left the room there, room 16; he was going to the grocery store. . . . he was walking down this sidewalk near the rear door to the manager's quarters and he heard some moaning and went in to see what was the matter. The lady, Mrs. Gage, was on one knee and reached out and said, 'Terry', and slid down the front of him, and he could tell that she was in pretty bad shape, she was probably dying. She had been cut pretty bad around the neck, and he noticed some money laying on the floor to the kitchen and in the part where he found her, and . . . he picked that up and went back out through the kitchen door and back to his room." Brakefield further testified that the appellant told him that his blood type was "O-positive." Further, the appellant informed Brakefield that he had been discharged from the army and planned to return to his home in Washington, D.C. Brakefield told him not to leave Taylor without contacting him or the Chief of Police in Taylor. On March 8th, the witness discovered that the appellant had left town. Sometime during the end of March or early April, 1971, Rose Ella Huff Pope went to the investigating officers and reported what she knew about the homicide.

At trial she testified that she and her two year old child were living with appellant in cabin number 16 of the Trail Motel on the date in question. She testified that the appellant left their cabin, which the evidence shows was approximately 160 feet from the entrance to the manager's office, sometime between seven and eight P.M. on February 28th, to go to the store. He was gone some ten or fifteen minutes. She stated that while she was in the bathroom she heard a "noise in the back." She called out and the appellant answered her and then entered the cabin. She stated that he had blood on his shirt, jacket, pants and shoes. He told her that the manager of the motel was dead and denied that he killed her. He took some money from his jacket that had blood on it and washed it off and then put some keys on the bed, changed clothes, and put the clothes in a bag. Later, some friends came to their cabin for a visit; one of the visitors' name was Truitt. She testified that she requested Truitt to drive her to her mother's house that evening where she burned the bloody clothes and hid the money that the appellant had given her. Truitt did not see her hide the money or burn the clothes as he stayed in the car while she was in her mother's house.

Witness Pope testified that appellant's version to her regarding the events prior to his return to the cabin was that, after he walked into the motel office, and after he heard a noise, Mrs. Gage walked up to him and in a very weak voice called his name and fell up against him. He did not see anyone else at the time. He saw two keys on a table. Using one of the keys, he opened the locked money box and took the money that was inside. Thereafter, he threw the two keys in the weeds that were growing between the grocery store and the motel.

Witness Pope further testified that on three separate occasions she inquired of appellant whether he had killed Mrs. Gage and on each occasion he denied doing so. She stated that the appellant left her and

returned to Washington, D. C. on March 6th.

The evidence shows that two keys were recovered in the vicinity between the motel and the grocery store located next door. One of the keys fit the cash box from the motel and the other fit the soft drink machine at the side of the motel.

This is a circumstantial evidence case and the jury was so charged. We must now determine if the facts and circumstances relied upon, when considered as a whole, are of a conclusive nature; leading to a satisfactory conclusion that the appellant is guilty and excluding all other reasonable hypotheses except his guilt. Such circumstances must produce, in net effect, a reasonable and moral certainty that the appellant and no other person committed the offense charged.

Appellant argues that a reasonable hypothesis that has not been excluded is that the deceased must have been dining with whomever killed her, and points out that three plates were at the dining table. Photographs of the dining table were introduced into evidence. They show three chairs around the table; however, two of them were against the wall with the table pushed up against them, not leaving enough room for anyone to have been sitting in either of those two chairs. Although three plates are shown on the table, only one has eating utensils placed next to it. The jury could have reasonably concluded that the other two plates were serving plates. What appears to be bread was on one plate and what appears to be another type of food was on the other plate.

The evidence further shows that the deceased's body was found in the room so close to the door that the door could be opened only a short distance. It could not have been opened wide enough for anyone to walk into the room.

The medical testimony reveals that the deceased would have been able to move only a very short time after receiving her wound and that it was very improbable that she could have spoken. The jury could very well have concluded that appellant's version of the facts, i.e., that he came along after the deceased had been wounded and the killer had escaped, is highly improbable in view of the very short time the deceased could have lived.

Also, there are inconsistencies in appellant's various exculpatory statements. First he contended he found out about the murder the following morning. Later, he told the officer about entering the cabin to see what was the matter. In that discussion, appellant described the deceased as being on one knee and reaching out for him. He told Mrs. Pope, however, that the deceased staggered up to him and fell. He told an officer that he found the money on the floor; whereas, he told Mrs. Pope that he saw keys to the cash box and subsequently took the money from the cash box. He also told Mrs. Pope that he threw the keys between the grocery store and the motel.

Another important element in this case, showing evidence which tends to exclude every reasonable hypothesis except guilt of the appellant, is flight. This type consciousness of guilt is one of the strongest kinds of evidence of guilt, and is admissible for that purpose. See, e.g., Crenshaw v. State, Tex.Cr.App., 389 S.W.2d 676.

The court charged the jury that Mrs. Pope was an accomplice witness as a matter of law; charged them on the law of circumstantial evidence; and, charged them on the state's burden to disprove exculpatory statements by the accused. We conclude that the evidence is sufficient to support the verdict.

There being no reversible error, the judgment is affirmed.