**Alberto Guerrero VERA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46452.**

Court of Criminal Appeals of Texas.

Sept. 25, 1973.

---

Tom A. Boardman, Dallas, for appellant.

Henry Wade, Dist. Atty., Wm. J. Teitelbaum, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

This is an appeal from a conviction of unlawful possession of a narcotic drug, to-wit, heroin; punishment was assessed by the jury at twenty (20) years.

Appellant contends in his first ground of error that the evidence is insufficient to support the verdict.

The record of the proceedings in the presence of the jury reflects the following evidence as viewed in a light most favorable to the verdict.

At approximately 8:30 P.M. on October 2, 1971, R. T. Diaz, a narcotics officer of the Dallas Police Department, was waiting for and subsequently received a telephone call from a confidential informant in Laredo, who had been trying to reach him since 4:00 P.M. that afternoon. The phone call from the informant related to activities of Alberto Guerrero Vera, also known as Beto Vera, appellant herein. The record reflects that the informant told Diaz that Beto Vera and another occupant would be driving a white 1965 Ford, license number LWJ 908, from Laredo to Dallas and that approximately fifteen ounces of heroin would be hidden in the trunk of the vehicle. Diaz testified that he had received other information from his informant on other occasions in the past that had proven to be correct but that he wished to keep the identity of the informant secret in order to insure his safety.

As a result of the conversation, Diaz dispatched Detective Fowler, Investigator Nowell and Investigator Irby, all Dallas narcotics officers, to set up surveillance along the route appellant was alleged to be travelling. The officers stationed themselves at the 9700 block south of the R. L. Thornton Freeway or Interstate Highway 35 South within the city limits of Dallas. After instructing Officer Heald to check the ownership of the car with the Department of Public Safety records from the license number and make of the car secured from the informant, and then secure a search warrant for the vehicle, Diaz proceeded to the surveillance point set up by the other officers. Diaz, while at the surveillance point, decided to proceed closer in towards Dallas where there was more light and set up another point of surveillance.

Detective Fowler, an officer at the initial point of surveillance, testified that, pursuant to instructions to look for an automobile of a specified make and license plate number, containing two occupants, he followed the white 1965 Ford, LWJ 908, while another officer passed the vehicle in order to stay in front of it. Fowler further testified that at around the 9500 block of R. L. Thornton Freeway they turned on the high intensity red lights underneath the grill of their unmarked police car and began flashing the headlights from bright to dim, but he did not turn on his siren because the vehicle they were following decreased in speed and pulled on over to the shoulder of the highway.

After the white 1965 Ford had stopped on the shoulder of the highway, Fowler

got out of his vehicle and approached the Ford. At the same time, appellant, the passenger in the Ford, got out of the right front door of the vehicle and looked back at the squad car. As Fowler approached he identified himself loudly as "the police" in Spanish. Thereupon appellant jumped back in the Ford and the vehicle accelerated at a high rate of speed. Officers Fowler and Nowell jumped back in their car and proceeded to pursue the Ford. At this time, Irby, from his position in front of the Ford, accelerated ahead of it in an attempt to keep the subject vehicle between the police cars.

Subsequently, after approximately a two block pursuit, the subject vehicle came to a natural stop, and both Fowler and Nowell approached the vehicle and placed the occupants in custody.

While Fowler and Nowell were completing the arrest, Diaz, hearing over the police radio of the arrest and flight, called Officer Heald to come out to the scene also. Diaz arrived at the scene in a few minutes, followed shortly by Heald.

Diaz stated that although the informant had told him the contraband was in the trunk of the vehicle he instructed one officer to search the hood and another officer to search the inside of the car so that appellant would not know that they already knew where the contraband was. This was done, Diaz stated, because the informant had seen appellant put the narcotics in the trunk and he was, therefore, protecting his source. Diaz also stated that, while informing appellant he was under arrest and giving him proper warnings, appellant interrupted and told him in Spanish that he didn't have any heroin. When officer Heald arrived, Diaz instructed him to search the trunk, whereupon, Heald found five one-ounce packages of heroin.

Heald testified that before he could finish securing a warrant he was called by Diaz to assist in the arrest. Heald further stated that he found a plastic package containing five small plastic bags containing a brown powder substance, stipulated as being heroin, inside a reinforced area in the trunk. Heald said that he found the plastic container after searching approximately five minutes, even though he knew it would be in the trunk, according to the informant's information.

The chemical analysis and chain of custody were stipulated to by appellant. Five clear plastic bags containing heroin were admitted without objection.

Appellant testified that he owned the vehicle in question but that he and the driver of the car, Antonio Salinas, were on their way to Dallas to pick up a car owned by appellant's mother and that they each were going to drive one car back to Nuevo Laredo, Mexico. Appellant denied any knowledge of the contraband and further stated that he had not seen anyone put any heroin in the car although he had loaned his car to others several days before the trip. In reference to the alleged flight, appellant stated that they had stopped to change drivers and that there was "another car and it stopped and they shot two or three times and we got in the car and left and we saw another car behind with a red light and then we stopped."

In reference to his statement, appellant testified that he was asked "donde está chiva" or "where is the stuff" in Spanish by Diaz but that he thought he was referring to pants or a shirt and that he didn't know what Diaz was talking about.

Antonio Salinas, the driver of appellant's car, was called as a defense witness. He testified that he knew nothing of the heroin but was to drive a car back to Nuevo Laredo for Vera.

Appellant contends that the evidence was insufficient to prove that he had knowledge of the existence of the narcotic drug alleged to have been possessed by him. Appellant cites no authority in support of his contention.

We must accept the findings of the jury on conflicting testimony and deter-

mine whether or not there is evidence from which they were warranted in finding beyond a reasonable doubt that the appellant committed the offense as charged. Rodriguez v. State, 164 Tex.Cr.R. 641, 301 S.W.2d 921; Valdez v. State, Tex.Cr.App., 481 S.W.2d 904; Floyd v. State, Tex.Cr. App., 494 S.W.2d 828.

■ It is undisputed that appellant was the owner of the car. Appellant controlled the vehicle from its departure in Nuevo Laredo until its arrival in Dallas, even though he was not driving the vehicle at the time of the arrest. The unlawful possession of the contraband need not be exclusive to reflect a violation of the law. See Buntion v. State, Tex.Cr.App., 476 S. W.2d 317; Ellis v. State, Tex.Cr.App., 456 S.W.2d 398. Likewise, appellant's flight was also probative in establishing guilt. Weeks v. State, Tex.Cr.App., 476 S.W.2d 310; Waters v. State, Tex.Cr.App., 491 S. W.2d 119.

Viewing the evidence in a light most favorable to the State, we find that the evidence is sufficient to support the conviction.

Appellant's first ground of error is overruled.

Appellant contends in his second ground of error that "The trial court erred in refusing to suppress the contraband seized in this case, thus violating the defendant's rights under the Fourth Amendment to the Constitution of the United States."

■ Officer Diaz, acting on information from a previously reliable informant, set up surveillance on the route appellant would be travelling. As in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327; Almendarez v. State, Tex.Cr. App., 460 S.W.2d 921; Coyne v. State, Tex.Cr.App., 485 S.W.2d 917; Mendoza v. State, Tex.Cr.App., 492 S.W.2d 489; sufficient details were furnished to enable the officers to verify much of the information related by the informant. The informant described appellant's vehicle with particularity, provided the license number of the car, indicated the number of occupants and gave specific information concerning the location of the contraband in the vehicle. The information supplied was sufficient in detail to allow adequate corroboration of its trustworthiness and enable the officer to conclude that the informer spoke with personal knowledge or had gained his information in a reliable way. See Almendarez v. State, supra. At the point of interception every fact related by the informer, except the presence of the heroin in the trunk of the car, was verified. Thus, there was probable cause to believe that the one remaining fact, the presence of the heroin in the trunk of the car, was also true.

The arrest and search of appellant's car by the officers was made with probable cause.

The record reflects that the apprehension of appellant occurred while the police officers were in the process of preparing a warrant, but they had not secured the warrant before appellant's arrest. Appellant argues that since the officers had ample opportunity to secure a search warrant, and attempted to secure a search warrant, the failure to secure a warrant before the search of appellant's vehicle violated his Fourth Amendment rights under the United States Constitution.

As in Coyne v. State, Tex.Cr.App., 485 S.W.2d 917, appellant's argument appears to be based on the premise that probable cause for issuance of a warrant existed when the officer received the information from the informer. Such contention is not consistent with our holding that the information relayed to the officer by the informer did not ripen into probable cause until the officers had an opportunity to verify the details furnished by the informer. The corroboration of such information, except the presence of heroin in the car, occurred after appellant passed the surveillance point on the R. L. Thornton Freeway.

■ The mere fact that a warrant was being prepared is not dispositive of this issue. The record reflects that Officer Heald was called to the scene in order to assist in the apprehension of appellant.

Appellant was in control of the vehicle and had attempted to flee. Under the circumstances it was impracticable to secure a warrant. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879; Coyne v. State, supra. See also Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

Exigent circumstances were present in the instant case to justify a warrantless search. It was impossible for the officers to forecast when and where it would be possible to apprehend appellant. As long as the vehicle was under appellant's control, there existed the possibility of his escape and destruction of the contraband. Coyne v. State, supra. Cf. Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744.

The arrest of appellant, search of the automobile and seizure of the heroin were authorized. The trial court did not err in overruling the motion to suppress the evidence.

Appellant's second ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.