### JUAN HERNANDEZ V. THE STATE.

No. 20038. Delivered December 14, 1938.
On Appellant's Motion to Reinstate Appeal May 17, 1939.
Rehearing Denied June 21, 1939.

The opinion states. the case.

*Wade & Wade,* of Beeville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.
· The offense is possession of marihuana; the punishment, confinement in the penitentiary for two years.

No sentence appears in the record. In the absence of sentence this Court is without jurisdiction.

The appeal is dismissed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION TO REINSTATE APPEAL.

CHRISTIAN, Judge.
The record having been perfected, the appeal is reinstated and the case considered on its merits.

W. J. Corrigan, constable, and J. B. Arnold, sheriff, went to appellant's home on the 7th of April, 1938, for the purpose of searching for marihuana. When appellant came to the front door they advised him that they had information he was in possession of marihuana, and that they wanted to search his house. Appellant replied: "All right; enter and search it." At this juncture .we quote from the testimony of the constable, as follows: "We searched the house and found marihuana. Mr. Arnold and I were both searching and Mr. Arnold is the one that found it. I.was present at the time he found it stuck on the inside of the door on the left through which we entered the room, kind of back in between the lock in this envelope here and he picked them up. It was found in cigarette form inside of an envelope. I have seen this envelope before and it is the envelope that the cigarettes were found in. Mr. Arnold took the envelope and marihuana in his possession. Defendant was placed under arrest and brought down to jail. I have been an

officer about 27 years, about 6 years which has been spent down here, I think since '31—five or six years and prior to that time, the rest of it was spent in New Mexico. During that time I have become familiar with marihuana and I know it when I see it. There is not much smell to it, but I can tell it from the weed, and can tell it after it has been taken from the weed and placed in cigarettes. * * * In my opinion these cigarettes (referring to the cigarettes found in appellant's home) are marihuana."

Mr. Arnold testified that he found four cigarettes in the appellant's home. He said: "If I know marihuana, that is marihuana; but I am not positive of that." Lamar Diegel, night watchman, testified as follows: "I have been an officer of some kind in this county for nearly four years. During that time and prior to that time I had opportunity and occasion to become familiar with what we know as marihuana. I have seen it growing in its natural state, and I have seen it grown in this county. I have seen it after it was made in cigarettes but have never smoked any of it except as a witness. I know what it tastes like and I know the smell of it. * * * After taking one of the cigarettes and lighting it my opinion is that it is marihuana."

Zaragosa Garcia, a witness for the State, testified that he went to appellant's home on two occasions during the month of January and bought some marihuana cigarettes from appellant. We quote from the testimony of said witness: "He brought me two cigarettes which he said were marihuana. * * * I have seen a cigarettes like this one (referring to one of the cigarettes introduced in evidence) before. I saw it before when I bought it from Juan Hernandez, the defendant in this case. I was at his house at the time I bought the cigarettes from him." Further, the witness testified: "They (referring to the cigarettes) didn't have any effect on me at all."

Appellant did not testify but introduced his wife, from whose testimony we quote, in part, as follows: "Juan (appellant) and I had been working at Mrs. Ray's. Juan was cleaning some furniture at Mrs. Ray's house. When we got back to our house it was around two o'clock in the afternoon. We have never had the door to our house locked because we didn't have a lock. * * * When I left the house that morning I saw this envelope (referring to the envelope introduced in evidence) on top of the dresser. I was present when the officers were there and I saw them find the envelope behind the dresser, hid in the wall paper. The envelope was there on top of the dresser but it didn't have anything in it at the time I left the house

that morning. It was not ever seen behind the dresser by me. I keep house there for my family and if it had been there that morning I could have seen it. I have never seen any marihuana cigarettes around that house and I have never seen Juan Hernandez smoke any marihuana cigarettes." She testified further that Talesfero Gomez and his wife lived in the house with witness and appellant.

We deem the evidence sufficient to support the conviction.

Appellant objected to the testimony of the officers to the effect that the cigarettes contained marihuana on the ground that they were not "qualified as experts to give such an opinion." We think the objection was properly overruled. The witnesses gave testimony showing that they were familiar with marihuana. In Miller v. State, 50 S. W. 704, Presiding Judge Davidson, speaking for the court, said: "While the witness Robertson was on the stand he testified that his residence in the City of Temple was burglarized on the night of the 12th of November, 1898, by someone unknown to him; that he was aroused during the night by hearing the noise, and smelled chloroform. Appellant objected to the remark of the witness with reference to chloroform, because he had not qualified himself as an expert on medicines and drugs, and it was his mere opinion. Several other objections were urged. This testimony was clearly admissible." We quote from 11 Ruling Case Law 636: "The identification of an odor as that of a certain drug or poison may be made and testified to by any person familiar with the drug in question."

Bill of exception No. 2 relates to appellant's objection to the testimony of Zaragosa Garcia to the effect that during January of 1938 he went to appellant's home and bought marihuana cigarettes from appellant. Appellant sought through the testimony of his wife to lead the jury to believe that the other occupants of the house had placed the cigarettes in his room. Also his wife testified that she had never seen marihuana cigarettes in her home. Again, it has been observed that Garcia said: "I have seen a cigarette like this one (referring to one of the cigarettes found in appellant's home) before. I saw it before when I bought it from Juan Hernandez, the defendant in this case." Thus it is seen that the testimony of the witness was to the effect that the cigarette he bought was like the cigaretes found in the appellant's home on the occasion of the search. In Nichols v. State, 260 S. W. 1050, it appears that McElroy, a witness for the State, testified that he saw Nichols and his son making whisky. Further, he testified that a few

days later he saw Nichols and his son take some whisky across the river in a boat and saw Nichols return with some money and say that he had made a good haul. Nichols asserted that in the receipt of evidence of the latter transaction the rule against proving collateral transactions was transgressed. It appears that Nichols denied the transaction and introduced proof to the effect that the State's witness and his (Nichols') son possessed and operated the still in question. In concluding that such testimony was admissible, this Court, speaking through Presiding Judge Morrow, used language as follows: "That the still had been operated at the place indicated by the State's witness is not seriously combatted. The identity of the operators became a question through the appellant's defensive theory that the operators were the State's witness and the son of the appellant. This was opposed to the State's position that the operators were the appellant and his son. The State's testimony to the effect that there was a quantity of whisky (the fruit of the crime of manufacturing) at hand was not controverted; nor was the fact that the appellant's son was one of the offenders. Considering the appellant's testimony denying that he manufactured the whisky and the various attacks made by him upon the credibility of the witness relied upon by the State and the other defensive evidence mentioned, was it not relevant and competent that the State show that near the time and place at which the offense was committed, the appellant, in connection with his son, one of the conceded actors in the commission of the offense, was in possession of articles such as the still produced and engaged in selling it and conveying it to the purchaser? We think this question should be answered in the affirmative, and that such answer is consistent with the rule quoted from Mr. Branch announcing the prevailing exceptions in this State and in harmony with many of the cases to which reference has been made in this opinion. This Court has no desire, in fact, it is concerned to avoid any extension of the exceptions to the law opposing the receipt in evidence of collateral offense, but is constrained to the view that under the rule and the exceptions as they have heretofore been established, the evidence in question was not improperly received. It may be conceded that in introducing it, the State was premature; but the subsequent conduct of the case upon the part of the accused having rendered the testimony relevant, the immature receipt of part of it was not error justifying a reversal of the judgment."

In the present case the testimony of Garcia tended to show that the cigarettes found by the officers belonged to appellant,

in that, according to his version, the cigarettes he had bought from appellant were similar to the cigarettes taken from the home of the appellant by the officers. Under the circumstances, we are constrained to hold that the evidence in question was admissible.

Appellant excepted to the charge of the court for its failure to instruct the jury to find him not guilty unless they found the substance in question was a variety of Cannabis and came from the Cannabis plant, and did not come within any of the exceptions mentioned in the statute. Subdivision 13 of Section 1 of H. B. 440, Acts of the Regular Session of the 45th Legislature, reads as follows: "The term 'Cannabis' as used in this Act shall include all parts of the plant Cannabis Sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include the non-resinous oil obtained from such seed, nor the mature stalks of such plant, nor any product or manufacture of such stalks, except the resin extracted therefrom and any compound, manufacture, salt, derivative, mixture, or preparation of such resin. The term 'Cannabis' shall include those varieties of Cannabis known as Marihuana, Haseesh and Hasish.".

There was no testimony in the case calling for the charge sought by the appellant. The testimony of the officers that the cigarettes contained marihuana was not controverted. The term "Cannabis" includes marihuana. It does not include the non-resinous oil obtained from the seed of Cannabis Sativa L., nor the mature stalks of such plant nor any product or manufacture of such stalks except the resin extracted therefrom, and any compound, manufacture, salt, derivative, mixture, or preparation of such resin. In Burns Fawcett v. The State, Opinion No. 20,411, delivered May 3, 1939 (page 14 of this volume), we said: "The term 'Cannabis' is denominated as a narcotic drug * * *, and the term 'Cannabis' under said statute include those varieties of Cannabis known as marihuana. Consequently marihuana is classed as a narcotic drug."

The court instructed the jury, in substance, to acquit appellant if they believed from the evidence, or had a reasonable doubt thereof, that some person other than appellant placed the marihuana in the envelope found by the officers on the premises of appellant and that appellant had no knowledge thereof and did not exercise possession of the alleged mari-

huana, knowing the same to be marihuana. We think the charge adequately submitted appellant's affirmative defense.

The officers had no search warrant nor warrant of arrest when they searched appellant's home. Appellant objected to their testimony on the ground that the search was illegal, his position being that he had been illegally arrested and therefore could not freely consent to the search. It is the unbroken rule in this State that "an accused may give his consent to a search and thereby waive irregularities in the search warrant or dispense altogether with the necessity for one." 38 Texas Jur., 77; Davidson v. State, 72 S. W. (2d) 591. Thus, where an officer without having a search warrant or indicating that he has one, makes a request to search the premises of the accused and the accused replies, "All right," or "All right; go ahead," he is in the attitude of giving his consent to the search. But, if the officer is armed with a defective search warrant and the accused employs the language just indicated, consent will not be inferred. In Dixon v. State, 2 S. W. (2d) 272, this court said: "We are of opinion that one, who is informed by the officers that they have a search warrant under which they propose to search his house, who says nothing further than, 'All right; go ahead,' cannot be held to thereby waive irregularities in the search warrant, or to have given his consent to the search without warrant." However, this Court has held that if the officer is armed with a defective search warrant and the accused says, "Go ahead and search; you don't need a warrant," it will be inferred from the language used that he consents to the search. Hogland v. State, 62 S. W. (2d) 137. In the present case it is observed that when the officers advised appellant that they wanted to search his house he replied: "All right, enter and search it." Giving effect to the announcement of the decisions, we are constrained to hold that his consent was given.

But appellant contends, as already pointed out, that he was under illegal arrest and therefore, as a matter of law, the consent given was involuntary. In view of the fact we have reached the conclusion that appellant was not under arrest, we leave the question last mentioned undecided. Looking to the testimony, we observe that it was the version of the constable that he had received information from Jose Salazar that appellant was selling marihuana. He testified: "I went there to arrest Juan Hernandez and if he had walked off and started away I wouldn't have let him get away; I would have held him until I finished my investigation. From the time we first saw him or any time that he tried to get away I or some of the

officers would have held him; wouldn't have let him get away." Further, he testified that appellant stated to him when he asked permission to search that he (appellant) did not have any marihuana in the house. Again, he testified that if appellant had not consented to a search he would have procured a search warrant. Touching appellant's appearance when he came to the door, he said: "He never showed that I noticed any excitement or any nervousness until I found the weed." The officers made no statement to the appellant apprising him of their intention to arrest him. Appellant did not testify as to his impression and there is nothing in the record to indicate that he reasonably believed himself to be under arrest. On the contrary, he appears to have entertained a different view. He was cool and collected and apparently thought the officers would find no marihuana. We quote from Burton v. State, 277 S. W. 390, as follows: "Whatever be the intention of the officer, if he had not arrested accused and accused was not apprised of his intention to arrest him at the time the statements are made, they are admissible, if accused did not reasonably believe himself to be under arrest. It is not altogether the intention of the officer that governs the matter. Many cases are cited by Mr. Branch in his Ann. Texas P. C., under Sec. 62 which illustrate the principle just stated." We quote from Sec. 62 of Branch's Ann. Texas P. C., as follows: "Although the officer would not have permitted the defendant to depart, yet if defendant did not reasonably believe himself to be under arrest, proof of his unwarned confession is admissible." In support of the text many authorities are cited, among them being Tores v. State, 166 S. W. 525. Applying the foregoing principles to the present situation, we are of opinion that it cannot be said that appellant had been illegally arrested at the time he gave his consent to the search.

A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

We have again examined the record in the light of the motion for a rehearing filed herein. While appreciating the

diligence of appellant's attorneys as manifested in their motion, we think we were correct in the views expressed originally, and see no reason for again writing thereon.

The motion will therefore be overruled.