Robert Emmett HOULIHAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 54269.

Court of Criminal Appeals of Texas.

May 25, 1977.

Rehearing Denied June 22, 1977.

Dick DeGuerin, Houston, for appellant.

**720**

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III and Richard H. Cobb, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from an order revoking probation. The appellant waived a jury trial and entered a plea of guilty before the court to the offense of possession of marihuana. After finding the appellant guilty, the court assessed punishment of imprisonment for 5 years. The imposition of sentence was suspended and on October 13, 1972, the appellant was placed on probation, subject to certain conditions, among which was that he "commit no offense against the laws of this or any other state or the United States."

On April 18, 1973, the State filed a motion to revoke probation alleging that the appellant had violated a condition of probation by committing the offense of possession of marihuana on or about April 15, 1973. On November 25, 1975, after hearing the State's motion to revoke probation, the court entered an order revoking probation and sentenced the appellant.

Appellant contends the court abused its discretion in revoking his probation because the marihuana admitted in evidence and which formed the basis for the revocation of probation was obtained as a result of an unlawful search and seizure. Appellant argues that the arrest and search were unlawful because the officers did not have probable cause to arrest him without a warrant and that, if the officers had probable cause, such knowledge was obtained as the result of illegal electronic surveillance.

The State asserts that the officers had probable cause to arrest and search the appellant and to search the van he was driving, that probable cause was not obtained as a result of an illegal electronic surveillance, and that in any event there was sufficient evidence to show that appellant possessed marihuana prior to the arrest and search.

Robert Parsons was an agent of the Federal Drug Enforcement Administration working in an undercover capacity in April of 1973. At that time Parsons was engaged in negotiations to purchase five hundred pounds of marihuana from the appellant. On April 13, 1973, Parsons met the appellant at an apartment in Houston. At that meeting the appellant told Parsons that he had the marihuana and that it was located out in the country. The appellant had a sample of the marihuana and showed it to Parsons. Parsons agreed that the marihuana was satisfactory and they made arrangements for the appellant to deliver the marihuana on the following day, April 14th.

On April 14, 1973, Parsons met the appellant at a motel in Houston. Another undercover agent, Don Perry, accompanied Parsons to the motel and showed the appellant $45,000, the purchase price for the marihuana. Parsons obtained a white Dodge van for the appellant to use in transporting the marihuana. This van was owned by the Houston Police Department and was equipped with an electronic device that transmitted an electrical impulse (beeper). Another police car was equipped with a receiver for tracking the van. With the receiver the officers could determine the approximate direction and distance they were from the beeper. The appellant left the motel in the Dodge van to pick up the marihuana. The law enforcement officers involved in the surveillance of the appellant were in three vehicles. Federal agent Oakum and Officer Avilla were in one car. Officers Wells, Huerta, and Zavalla were in another car. Officers Blalock and Rose were in the third car. Officer Blalock's car was the only car equipped with a receiver for tracking the location of the van which had the beeper attached.

When the appellant left the motel driving the van all of the officers followed him. As they were following the appellant out of town on Westheimer Road in Houston they lost visual contact with the van. Officer Blalock in the car with the tracking receiver also lost contact with the van. He stated

that a thunderstorm was in progress and every time lightning would strike the electrical impulse from the lightning would register a false reading on the receiver. As a result of the weather Officer Blalock also lost electronic contact with the van.

After the officers all lost contact with the appellant, Officer Wells continued driving out Westheimer Road into the country. As they were driving along Westheimer Road, which was a farm-to-market road outside the city, they saw a white van backed into the door of a barn near a farmhouse. Officer Wells radioed the other officers that they had possibly found the appellant and set up surveillance of the barn and farmhouse where the van was parked. Although the evidence is uncontradicted that Wells first observed the van at the barn by visual observation only, the evidence was conflicting as to whether the electronic device was used to verify that the white van was the same one the appellant was driving. Wells' car was not equipped with a tracking device and he testified that they did not use the beeper to verify that the van was the one in question. They did not observe anyone load or unload anything from the van and did not observe any activity around the van. When the van left the farm and entered the highway, Wells was able to verify that the van was the one the appellant was driving by reading the license plates with binoculars. He denied that Officer Blalock, by use of the electronic tracker, told them on the radio that the van was the one appellant was driving.

Officer Blalock, who was driving the car with the tracking device, said that when they heard over the radio that the appellant had possibly been located, they drove out Westheimer Road. As they approached the barn the tracking device indicated that the van was the same one appellant was driving. Blalock testified that he was sure he called Wells on the radio and verified that the van was the one in question. Officer Zavalla, who was in the car with Wells, testified that as Blalock's car approached the farm, Blalock said the beeper was strong. When Blalock reached the location where Wells and Zavalla were, Zavalla said

they pointed out to Blalock the location of the van. Zavalla testified that Blalock said that must be the van. "That's our signal. It's got to be the truck."

After the appellant left the barn the officers in the three unmarked cars followed him back into Houston. They never lost visual contact with him again. According to plans discussed earlier in the day, if the negotiations for the purchase of the marihuana were successful, the officers would arrest the appellant before he returned to the motel in order to attempt to preserve the undercover identity of Parsons. After following the appellant into town, Agent Oakum attempted to stop the appellant. Oakum drove his car alongside the van and Officer Avilla held his badge out of the window and signaled for the appellant to stop. When the appellant would not stop the van, Officer Zavalla shot one of the van's tires with a shotgun. The appellant was arrested and the van was searched. The officers found in the van what was proved to be 460 pounds of marihuana.

After hearing the evidence, the court overruled appellant's motion to suppress and revoked appellant's probation. The court found that electronic surveillance was used by the law enforcement officers, but that the electronic device did not in fact lead to the recovery of the contraband.

In support of his argument that the electronic tracking device rendered the arrest and search unlawful, appellant relies upon *United States v. Holmes*, 521 F.2d 859 (5th Cir. 1975), affirmed on rehearing by an equally divided court sitting en banc, 537 F.2d 227 (5th Cir. 1976). Holmes negotiated a sale of 300 pounds of marihuana to an undercover agent. While Holmes and the agent were negotiating the sale in a lounge another agent attached an electronic surveillance beeper, like the one in the case at bar, to Holmes' van. The agents began a visual surveillance of Holmes' van but lost track of it. An airplane equipped with a tracking receiver was used to search for the van. The pilot of the plane was never able to visually spot the van; however, by using

the tracking receiver he was able to approximate its location in a wooded rural area of Florida. As a result of the electronic beeper law enforcement officers on the ground were able to locate the van, later stopping it and discovering 1200 pounds of marihuana in the van. The Fifth Circuit Court of Appeals affirmed the Federal District Court's order suppressing the evidence. The Court held that the installation of the electronic tracking device on Holmes' van was a search within the meaning of the Fourth Amendment of the United States Constitution. Relying on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Court said that when a person parks his car on a public way he does not give up all expectation of privacy. The Court said:

> "No rational basis occurs to us for distinguishing the violation of the expectation of privacy involved in the installation of a 'beeper' on a car, in order to trace its movements, from the placing of a tap on the outside of a telephone booth in order to overhear and record conversations, *Katz*, supra."

*United States v. Holmes*, supra, is the only case on a Federal appellate court level which has been cited and which we have found that holds the use of an electronic tracking device violates a person's Fourth Amendment right against unreasonable searches and seizures. The Ninth Circuit holds that the use of an electronic location device to follow a vehicle moving about a public thoroughfare does not infringe upon a person's reasonable expectation of privacy and does not constitute a search, provided no reasonable expectation of privacy is violated by the initial installation of the beeper. *United States v. Pretzinger*, 542 F.2d 517 (9th Cir. 1976); *United States v. Hufford*, 539 F.2d 32 (9th Cir. 1976). In *Pretzinger*, the beeper was attached to an airplane pursuant to a federal magistrate's order which was held to have been authorized by Rule 41 of the Federal Rules of Criminal Procedure. In *Hufford*, one beeper was inserted into a drum of chemicals while the drum was still in the possession of the manufacturer. The other beeper was attached to the battery of a pickup truck pursuant to a court order. It has also been held that inserting an electronic tracking device into contraband which has been legitimately discovered and constructively seized at the border does not violate the Fourth Amendment because a person has no reasonable expectation of privacy as to the contraband. *United States v. Emery*, 541 F.2d 887 (1st Cir. 1976).

We find the facts in the instant case more like those in another Fifth Circuit decision, *United States v. Perez*, 526 F.2d 859 (5th Cir. 1976). In *Perez*, undercover agents inserted an electronic tracking device into a television set they exchanged for heroin. The Court said:

> ". . . a person who accepts an item of personal property in exchange for heroin has no reasonable expectation that it is cleansed of any device designed to uncover the tainted transaction or identify the parties. Surely, the tailing of a suspect by utilizing an electronic bug on moveable property constituting a direct part of the negotiated transaction seems no more objectionable than placing a 'tail' on his movements or the recording of the serial number of money given in exchange for illegal contraband or the marking of property passed in such an exchange so that it can later be identified. Additionally, unlike Holmes where the bug was put on the defendant's vehicle then in the constructive possession of the defendant, the 'bug' here was installed while the TV was in the rightful possession of the government agents."

See also *United States v. Bishop*, 530 F.2d 1156 (5th Cir. 1976), where the use of a beeper was upheld when it had been placed in specially marked "bait" money.

In the instant case the van in question was owned by the Houston Police Department and the electronic tracking device was placed on the van before appellant used it. A person who accepts the use of a vehicle to transport contraband should not have a reasonable expectation that it is cleansed of any device designed to identify its location. *United States v. Perez*, supra.

■ There is yet another theory on which this appeal may be affirmed. In a revocation of probation proceeding the trial judge is the sole judge of the facts. As the trier of the facts it is his duty to resolve any conflict in the testimony. *McGuire v. State*, 537 S.W.2d 26 (Tex.Cr.App.1976). The trial court found that the electronic tracking device did not lead to the recovery of the contraband. It was uncontradicted that the officers located the van at the barn by visual observation alone. Even if the van had not been equipped with the tracking device, the officers would have been able to verify that the van was the one the appellant was driving by waiting until it resumed travel on the public highway and observing it visually. Not all evidence which is the "fruit of the poisonous tree" requires application of the exclusionary rule. The test is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The trial court's findings that the tracking device did not lead to the recovery of the contraband is supported by the evidence. No abuse of discretion is shown. See *United States v. Worthington*, 544 F.2d 1275 (5th Cir. 1977).

■ Appellant also contends the court abused its discretion in revoking his probation because the officers did not have probable cause to arrest and search the appellant or the van. Undercover agent Parsons was negotiating the purchase of the marihuana from the appellant. The appellant told Parsons that the marihuana was located in the country and that he would deliver it on April 14th. The appellant was to use the van to transport the marihuana. The appellant alleges that none of the officers testified that they knew the appellant would use the van for transporting the marihuana. This allegation is not supported by the record. The record clearly shows that the officers knew of Parsons' negotiations and their surveillance of the appellant when he left the motel was to locate the cache of marihuana. Officer Oakum testified that he knew that a purchase of marihuana was supposed to be made from the appellant. The officers had discussed their plans earlier in the day on April 14th and if the negotiations were successful they planned to arrest the appellant before he returned to the motel. When the officers observed the van backed into a barn in the country this confirmed the appellant's statements to Parsons. In addition, the officers were not acting upon information received from an unnamed informer, but upon information received from their own undercover agent who had first-hand knowledge of the transaction. The officers had probable cause to arrest and search the appellant. No abuse of discretion is shown. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Vera v. State*, 499 S.W.2d 168 (Tex.Cr.App. 1973); *Almendarez v. State*, 460 S.W.2d 921 (Tex.Cr.App.1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Kwant v. State*, 472 S.W.2d 781 (Tex.Cr. App.1971).

■ We also agree with the State's contention that the evidence is sufficient to show that appellant violated a condition of his probation by possessing marihuana prior to the arrest and search. On April 13, 1973, Parsons met with the appellant at an apartment in Houston. Parsons testified concerning this meeting as follows:

"Q. And at that meeting what did this defendant say to you in regards to the purchase of five hundred pounds of marijuana?

"A. He said he had the marijuana for sure, that it was out in the country. We agreed to arrange for delivery the following day on the 14th of April. He stated that he did not want to do it that evening because it was too late. *He had a sample of the product. I looked at it and agreed it was satisfactory* and he

made a telephone call at that time and stated that he would be agreeable to deliver the marijuana the following day." (Emphasis added.)

The testimony clearly shows that the "sample" Parsons, the undercover narcotic agent, referred to was marihuana. The appellant did not object to this testimony, nor did he test the witness' ability to recognize marihuana. This Court has held that an experienced officer may be qualified to testify that a green leafy plant substance is marihuana. *Miller v. State*, 168 Tex.Cr.R. 570, 330 S.W.2d 466 (1959); *Satery v. State*, 455 S.W.2d 294 (Tex.Cr.App.1970); *Jordan v. State*, 486 S.W.2d 784 (Tex.Cr.App.1972); *Boothe v. State*, 474 S.W.2d 219 (Tex.Cr. App.1971). Cf. *Curtis v. State*, 548 S.W.2d 57 (Tex.Cr.App.1977).

The evidence is sufficient to show, by a preponderance of the evidence, that the appellant possessed marihuana and thus violated a condition of his probation. The trial court did not abuse its discretion in revoking probation.

The judgment is affirmed.

Opinion approved by the Court.