Roy Lee WARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 688–82.

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1983.

Michael R. Hoffman, Tom S. McCorkle, Dallas, for appellant.

Henry Wade, Dist. Atty. and Karen Chilton Beverly, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

In a trial before the court the appellant was convicted of the unlawful possession of less than two ounces of marihuana. Punishment was assessed at one day in the

Dallas County Jail and a $200 fine. Appeal was taken to the Court of Appeals for the Fifth Supreme Judicial District of Texas, in Dallas, which affirmed the conviction. This Court granted the appellant's petition for discretionary review on October 13, 1982.

The appellant advances three grounds of error: that the State was not ready for trial within the applicable time limit set forth in the Speedy Trial Act, 32A.02, V.A.C.C.P.; that the inventory search of his car violated the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution, and that the contraband obtained therefrom was improperly admitted into evidence; and that the evidence was insufficient to prove that the substance seized was marihuana. We disagree and affirm.

The record reflects that on July 28, 1980, Officer Lybrand of the Dallas Police Department noticed a pick-up truck traveling at a high rate of speed. After following the truck for approximately five blocks, Officer Lybrand established that the truck was traveling 50 miles per hour in a 35 mile per hour zone. When Officer Lybrand turned on his siren he saw the appellant lean over to his extreme right, holding the steering wheel with his left hand. Officer Lybrand said that as the appellant leaned over, "he appeared to be doing something." The appellant then pulled over and Lybrand asked to see his driver's license. The appellant answered that he had no identification so Lybrand placed him under arrest. The appellant was placed in the back of the police car and Officer Lybrand began to make an inventory search of the truck in order to protect the vehicle and its contents. During the search he saw a yellow envelope sticking out between the driver's seat and the passenger's seat. He opened the envelope and inside found a baggie containing a substance he believed to be marihuana.

The appellant contends that the State failed to show that the substance possessed by the appellant was marihuana. Specifically, he complains that there was no description of the characteristics of the substance seized, nor was there a comparison of

the substance seized with what the officer knew to be marihuana.

It is undisputed that the marihuana was not introduced, nor was a chemical analysis introduced. The State, however, contends that Officer Lybrand was testifying in the capacity of an expert witness and on the basis of his previous experience and training regarding the identification of marihuana. Officer Lybrand's testimony concerning the marihuana is as follows:

"Q. [PROSECUTOR]: Sir, you have testified that the substance that you found in the envelope was a substance you believed to be marijuana, let me ask you, have you—prior to your having become an officer had you had any training whatsoever in the identification of narcotic substances?

"A. Yes, I had.

"Q. And what did that training consist of?

"A. It consists of in my police—in the Dallas Police Academy it consists of training in marijuana and certain types of pills that would be recognized.

"Q. And what did your instructions include?

"A. I don't understand—

"Q. What was the instruction, or how did they instruct you how to recognize these substances?

"A. They had samples of marijuana and they had samples of the pills for us to observe.

"Q. So you would have actually seen marijuana in that course?

"A. Yes, sir.

"Q. Okay. And in your work later, I believe you testified you had been a police officer for five years, during that five year period, and prior to the date of the offense alleged, in this case, sir, had you had many opportunities to confront marijuana in the course of your work as a police officer?

"A. Yes, sir. I had.

"Q. Had you made actual arrests for the possession of marijuana?

"A. Yes, sir, numerous times.

"Q. In those prior occasions, sir, had you had any laboratory analyses run on those substances to determine whether or not in fact it did analyze as marijuana?

"A. Yes, sir."

[Objection by defense counsel overruled.]

"Q. Okay. And sir, were your suspicions in many past cases confirmed about the substance being marijuana?

"A. Yes, sir.

"Q. On the day in question, this substance which you have testified about, that was in the envelope, sir, about how much did there appear to be in the envelope?

"A. It appeared to be around two ounces, or less than two ounces.

"Q. Less than two ounces?

"A. Yes, sir.

"Q. Have you had much experience working with narcotics, Officer?

"A. Yes, I have.

"Q. Do you know how much is a useable quantity of marijuana?

"A. Yes, sir. I do.

"Q. Would you say there was enough marijuana in that envelope that would roll, say, at least one marijuana cigarette?

"A. Yes, sir.

"Q. More than one marijuana cigarette?

"A. Yes, sir.

"Q. Would it be many?

"A. Yes, sir. It would."

■ That Officer Lybrand testified that he *believed*[1] the substance discovered to be marihuana does not render the evidence insufficient to show that the substance in fact *was* marihuana. Officer Lybrand did not at any time express any doubt as to the

identity of the substance, nor was he cross-examined on his "belief" as to the identification he had made. Neither did defense counsel object to Officer Lybrand's testimony as an expert witness or to his ability to identify a substance as marihuana. It is clear from the above testimony that, although he used the concept "belief" to describe his thoughts, Officer Lybrand was giving his expert opinion on the identification of the substance as marihuana. See McCormick and Ray, Texas Practice: Law of Evidence (3rd Ed.1980), Sec. 1938. The evidence was sufficient to support the trial court's conclusion that the appellant was guilty of the offense of possession of marihuana. See *Houlihan v. State,* 551 S.W.2d 719 (Tex.Cr.App.1977); *Boothe v. State,* 474 S.W.2d 219 (Tex.Cr.App.1971); *Miller v. State,* 168 Tex.Cr.R. 570, 330 S.W.2d 466 (1959); *Hernandez v. State,* 137 Tex.Cr.R. 343, 129 S.W.2d 301 (1938)

The appellant contends that the inventory search of his car violated the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution, and that the marihuana seized during that search should not have been admitted into evidence. Officer Lybrand's testimony reveals that he observed the appellant driving at an excessive speed and that when he stopped the appellant and asked for his driver's license the appellant said he did not have one with him. Officer Lybrand then asked the appellant to step out of the truck and he arrested him. An inventory search of the truck was conducted, during which Officer Lybrand found the marihuana in an envelope between the front seats. Neither at trial nor on appeal has the State attempted to justify the search of the truck as anything but an inventory search. Cross-examination of Officer Lybrand by defense counsel produced the following colloquy:

"Q. Did the fact that you saw these gestures of the defendant prior to stopping him for speeding as he

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indi-

cated.

turned the corner off of Hatcher on to Wellington, what part did that play in your mind to conduct the inventory search?

"A. None what-so-ever."

 The burden of proof is upon the State to show a lawful inventory search. *Benavides v. State,* 600 S.W.2d 809 (Tex.Cr. App.1980). The appellant contends that there was no showing that the seizure and subsequent search of the truck was justified because there was no showing that the vehicle was an impediment to traffic or was a hazard on the road where it was stopped. In the instant case, however, the State did show justification for the inventory search. Officer Lybrand testified that he had already determined that the appellant would be placed in custody and taken to jail. He further testified that he made an inventory search of the truck in order to protect the vehicle by placing it in the auto pound and in order to protect any valuable articles in the truck by placing them in the police department property room. The inventory search was not conducted for no reason as the appellant contends; clearly, Officer Lybrand could not have properly allowed the appellant to drive away from the scene without a driver's license. Impoundment of the vehicle would have been the logical and proper consequence of the arrest had not the appellant's wife arrived on the scene to take the truck home.[2] The inventory search was authorized under *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) and was not a violation of the United States or Texas Constitutions. The marihuana was lawfully seized and admitted into evidence.

The appellant contends that the trial court erred in denying his motion for dismissal under the Speedy Trial Act because the State was not ready for trial within the statutory limit of sixty days. Art. 32A.02, Sec. 1(3), V.A.C.C.P.

The record reflects that the appellant was arrested on July 28, 1980, and released on bail the following day. The appellant was charged with the offense by information filed in Cause No. MB–80–40734–B, and the State announced ready[3] in that cause on August 5, 1980. The case was first set on the trial court's docket on October 7, 1980, whereupon it was continued at appellant's request until December 30, 1980 for a trial before the court. Upon motion by the State that the affidavit in the cause was not signed, the trial court quashed the information on December 30, 1980. On the same date the State refiled the case under Cause No. MA–80–6485–B and filed a written announcement of ready for trial on January 21, 1981.

The appellant argues that "if the State was not ready for trial on December 30, 1980, then it had not been ready at all times prior thereto." We disagree. The record reflects that the affidavit erroneously was not signed, and on December 30, 1980, it was dismissed and a new affidavit substituted for it. The State announced ready for trial on August 5, 1980, and there is nothing in the record to show that the State could not have proceeded to trial on August 5, 1980, or on December 30, 1980.

It is the appellant's contention that a valid information is absolutely essential in order to show the State's readiness for trial. This Court has held that the existence of a valid charging instrument is an element of State preparedness. *Pate v. State,* 592 S.W.2d 620 (Tex.Cr.App.1980). However, in *Pate,* supra, the State could not have been ready within 120 days because there was *no* indictment or felony information upon which the State could have announced ready, valid or otherwise. We find the distinction between an announcement of ready on no indictment or information and an announcement of ready on a defective indictment or information to be of paramount significance.

---

**2.** Appellant's truck was inventoried by Officer Lybrand prior to the arrival of appellant's wife. The record is silent as to the reason for appellant's wife's presence at the scene of the arrest.

**3.** An Assistant District Attorney filed a written announcement of "ready" file-marked August 6, 1980.

The Speedy Trial Act does not require that the State be ready with a perfect indictment or information. Although it may be true that the defect in the first affidavit would have required a mistrial or reversal of a conviction, the presence of such a problem does not necessarily indicate that the State was not ready for trial. The Speedy Trial Act itself in fact anticipates situations in which a mistrial might be granted or a conviction reversed. See Art. 32A.02, Sec. 2(b), V.A.C.C.P. Had the instant case gone to trial and had the defect been discovered, a mistrial would have been granted, and time would again begin to run, for purposes of the Speedy Trial Act, on the date of the mistrial. That the Speedy Trial Act would *not* prohibit a retrial in this situation yet *would* bar any further prosecution in the instant situation, not within the statutory limit, defies logic. Additionally, if an indictment or information is found to be defective (within the statutory limit) and is dismissed on motion of the State, then any delay between the dismissal and the refile is subject to exclusion. See Art. 32A.02, Sec. 4(7), V.A.C.C.P. A defective indictment or information is thereby treated in much the same manner as other causes for trial delay. Thus the nature of the defect and the length of reasonableness of delay are to be weighed in determining whether or not the State is indeed not prepared for trial. Certainly the total failure to file an indictment or information indicates some unpreparedness for trial on the part of the State; the same, however, cannot be said for a mistakenly unsigned affidavit in support of an information.

In the instant case the error in the first information was corrected on the same day that the error was discovered. The appellant has not shown that the State's announcement of ready was not made in good faith or that the State was otherwise unprepared for trial. The appellant has not sufficiently rebutted the State's claim of preparedness for trial. See *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979).

We note that in *Kernahan v. State,* 643 S.W.2d 210 (Tex.App.1982) (Petition for Discretionary Review granted), the Court of Appeals in El Paso stated that "the existence of a valid charging instrument is as much an element of State preparedness as acquisition of evidence, witness availability and presence of the defendant," citing *Pate v. State,* 592 S.W.2d 620 (Tex.Cr.App.1980). That court, however, misinterpreted the holding in Pate when it held that "the State cannot be ready for trial in the absence of a *valid* charging instrument." To the extent that it is in conflict with this opinion, *Kernahan,* supra, is overruled.[4]

The judgment of the Court of Appeals is in the instant case is affirmed.

TEAGUE, J., dissents.

CLINTON, Judge, concurring.

The court of appeals found that Officer Lybrand testified "that the substance was, in his *opinion*,[1] marihuana," but the dissenting justice pointed out correctly that what the officer actually testified was that he found in an envelope a baggie "containing a substance I *believed* to have been marihuana."

The majority of this Court now opines that "although he used the concept belief to describe his thoughts, Officer Lybrand was giving his expert opinion on the identification of the substance as marihuana," and then directs the reader: "See McCormick and Ray, Texas Practice: Law of Evidence, (3rd Ed.1980) Sec. 139." The section is captioned "General Test for Receiving Opinions of *Lay Witnesses*—Ratiocinative Opinions (Understanding, Impression, Belief, etc.). And therein lies the weakness of the rationale of the majority on this point. Lay witnesses are allowed some latitude in expressing themselves, but Officer Lybrand is

---

4. The appellant in *Kernahan,* supra, principally relied upon Art. 17.151, V.A.C.C.P., and it was upon Art. 17.151, supra, that the court granted his request for habeas corpus relief.

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

found to be an expert when it comes to identifying a substance as marihuana.

To aid a finder of fact an expert may give an opinion founded on his skill, knowledge or experience regarding a matter beyond that of average laymen. Ray, Law of Evidence § 1400, 2 Texas Practice 23–26. However, I find it most doubtful that Officer Lybrand was testifying in an expert capacity. After all, it was he who chose to speak in terms of what he "believed," for his use of the word came in response to a question about what he found in the envelope. The questioner simply picked up on that, and sought to bolster a likelihood that the "belief" was well founded, but in my view he did not ever attempt to elevate the officer to expert status on identifying a substance as marihuana.[2] Accordingly, I would not fault appellant, as the majority does, for failure to object to the officer's "testimony as an expert witness," nor then rely on that alleged failure to find evidentiary support sufficient to show the substance was in fact marihuana.

To be straightforward about the matter, let us revisit what seems to be the first decision of the Court on this particular point: *Hernandez v. State,* 137 Tex.Cr.R. 343, 129 S.W.2d 301 (1938). The Court held that three Bee County officers were properly permitted to state their respective opinions—over objection not qualified as experts to give it—that substance in four cigarettes was marihuana, following testimony "showing that they were familiar with marihuana," *id.,* 129 S.W.2d at 303.[3] The sole case cited as authority is *Miller v. State,* 50 S.W. 704 (Tex.Cr.App.1899), which upheld admitting testimony of a lay witness that an odor he smelled was from chloroform—over objection that he was not an expert on medicines and drugs; it in turn cited *Conner v. State,* 6 Tex.App. 455 (1879). Thus, the Court treated the Bee County officers as *laymen* expressing opinions based upon familiarity with marihuana gained through experiences as law officers, and found their testimony that the cigarettes contained marihuana was sufficient evidence to support a verdict of guilt.

Since then the Court has accepted testimony from peace officers whose experience is shown to be adequate—without requiring that they be qualified as experts. See *Alcala v. State,* 163 Tex.Cr.R. 453, 293 S.W.2d 645 (1956); *Satery v. State,* 455 S.W.2d 294, 296 (Tex.Cr.App.1970); *Boothe v. State,* 474 S.W.2d 219 (Tex.Cr.App.1971); *Houlihan v. State,* 551 S.W.2d 719, 724 (Tex.Cr.App. 1977). On the other hand, in *Miller v. State,* 168 Tex.Cr.R. 570, 330 S.W.2d 466 (1959), testimony of an arresting officer that the substance seized was marihuana was found sufficient, in that his experience as a narcotics officer was enough "to show his qualifications to testify as an expert," *id.,* at 468;[4] see similarly, *Jordan v. State,* 486 S.W.2d 784, 785 (Tex.Cr.App.1972). Then, in *Pittman v. State,* 488 S.W.2d 89 (Tex.Cr.App.1972), writing as commissioner, Judge Dally, seems to have melded both notions into one: "... the arresting officer, who by his training and experience was shown to be an expert in the identification of marihuana ...," *id.,* at 91.

Instead of mixing differing concepts of expression of "belief" by lay witnesses and "opinion" by experts, this Court should delineate the two for the bench and bar, and then leave it to the prosecution to opt for one or the other, depending on training, experience and qualifications of the particu-

---

**2.** That the officer made past arrests for possession of marihuana, and, upon laboratory analyses, his *"suspicions in many past cases* [were] confirmed about the substance being marihuana" speaks more to the need for technical examination and testing by an expert chemist than to expertise of the officer.

**3.** A nightwatchman further testified that, after taking one of the cigarettes and lighting it, the smell was that of marihuana, in his opinion.

**4.** Curiously, the finding is followed by citations to *Hernandez v. State,* supra, and *Alcala v. State,* supra, yet each actually considered the identifying testimony as coming from officers expressing opinions as lay witnesses rather than qualified experts.

lar witness being offered to prove a substance is *marihuana.*[5]

Returning to the instant cause, I would find that the State did not undertake to, and did not in law, qualify Officer Lybrand as an expert, but relied on his familiarity with marihuana to support his stated belief that the bagged substance in the envelope was in fact marihuana—the lay witness rule. I would then hold that, though marginal at best, his testimony is sufficient to support the finding of the trial court that appellant possessed less than two ounces of marihuana. *Hernandez v. State,* supra, and its progeny cited *ante.*

Therefore, I agree that ground three must be overruled and, reluctantly, that the judgment of the court of appeals be affirmed.[6] Accordingly, I join the judgment of the Court.

---

**5.** Let it be understood that the lay witness rule is presently available for identification of marihuana, and not some other controlled substances such as heroin that appear in white or brown powdery form. *Curtis v. State,* 548 S.W.2d 57, 63 (Tex.Cr.App.1977), and see *Jones v. State,* 538 S.W.2d 113, 115 (Tex.Cr.App. 1976); *Duran v. State,* 552 S.W.2d 840, 843 (Tex.Cr.App.1977). The Court has long made just such a distinction. *Pesina v. State,* 560 S.W.2d 97, 98, n. 1 (Tex.Cr.App.1978).

**6.** Over my protestations the Court has upheld the obnoxious "inventory search" and extended its original rationale far beyond reason, e.g.,

*Backer v. State,* 656 S.W.2d 463 (Tex.Cr.App. 1983) and *Gary v. State,* 647 S.W.2d 646, 649 (Tex.Cr.App.1983). The case at bar is merely another example of just how far the majority is willing to go in finding this "inventory search" was "authorized under *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)," though it bears not the slightest resemblance to the factual context or legal justifications espoused by the Supreme Court of the United States in *South Dakota v. Opperman,* supra. See *Backer v. State,* supra, (Clinton Dissenting). Once again I must protest, but to dissent further is obviously futile.