Charles Dwayne BEHREND, Appellant,

v.

The STATE of Texas, Appellee.

No. 352–84.

Court of Criminal Appeals of Texas.

April 8, 1987.

Michael Byck, Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty. and Anne B. Wetherholt, Dennis Jones and Barbara Gibbs, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

This is an appeal from a conviction of murder pursuant to V.T.C.A. Penal Code, § 19.02. Punishment was assessed by the

jury at 99 years confinement in the Texas Department of Corrections.

Appellant's conviction was affirmed by the Dallas Court of Appeals in an unpublished opinion. *Behrend v. State*, No. 05–82–01289–CR, delivered January 4, 1984. On July 11, 1984, we granted Appellant's Petition for Discretionary Review to determine whether the State complied with the requirements of the Texas Speedy Trial Act, Art. 32A.02, V.A.C.C.P.[1] We affirm.

The record reflects that Milton Russell Caron was killed on or about January 6, 1981. His body was weighted and thrown into a well where it remained undiscovered for over one year. Appellant was arrested in connection with this offense on January 28, 1982.

On April 3, 1982, the Dallas County Grand Jury returned an indictment against appellant in Cause No. F–82–80882, charging him with capital murder pursuant to V.T.C.A. Penal Code, § 19.03(a)(2). The indictment alleged that appellant knowingly and intentionally caused the death of Milton Russell Caron "by suffocating deceased by holding a cloth soaked with chloraform [sic] over the mouth and nose of deceased, causing the deceased to inhale said chloraform [sic]," and that the death was caused while appellant was in the .course of committing and attempting to commit the offense of robbery. On May 18, 1982, 110 days after appellant's arrest, the State filed a written announcement of ready for trial in Cause No. F–82–80882.

On September 8, 1982, appellant was reindicted by the Dallas County Grand Jury in Cause No. F–82–78435 for the lesser included offense of the murder of Milton Russell Caron pursuant to V.T.C.A. Penal Code, § 19.02(a)(1). This indictment alleged that "the exact manner and means of causing death is unknown to the Grand Jurors." The record does not indicate that the initial indictment was dismissed by the State. The return of the subsequent indictment occurred 223 days after appellant's arrest. Trial commenced on October 4, 1982, 249 days after appellant's arrest.

Appellant moved for discharge under the Speedy Trial Act contending that the State could not have been ready within the time limits imposed by the Act. Appellant reasoned that since the State announced that it was ready to try the first indictment, which alleged the cause of death to be by chloroform inhalation, it could not have been ready all along to try the second indictment, which alleged the cause of death to be unknown. Appellant additionally contends that even if the State were ready on the first indictment, the readiness could not carry over to the second indictment because of the different allegations, citing *Rosebury v. State*, 659 S.W.2d 655 (Tex.Cr.App.1983). Appellant alleges that since the second indictment was not returned until the time limits of the Act had run, the State could not have been ready on the second indictment within those time limits. The State countered that it was ready on the first indictment and that readiness "carries over" to the second indictment, even though the second indictment did not come into existence until seven months after appellant was arrested.

Concerning appellant's first contention, Article 32A.02, § 1, V.A.C.C.P., provides:

"Sec. 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony."

It is undisputed that this criminal action commenced upon appellant's arrest on January 28, 1982. See Art. 32A.02, § 2, V.A. C.C.P.

At the outset, we are confronted with the issue of whether the State met its burden of showing readiness to try the first indictment within the time limits imposed by the Act. Appellant contends that since the State chose to reindict him for committing murder by a manner and means unknown to the grand jury, the State could not have actually been "ready" to try him on an indictment alleging that death was caused by suffocating the deceased with chloro-

1. Hereafter referred to as the "Act" or the Speedy Trial Act.

form. Essentially, appellant contends that since "manner and means unknown" and "death by chloroform" are mutually inconsistent, the State could not have been ready to prove both to a jury. We disagree.

The question of whether the State's "readiness" within the time limits set by the Act refers to preparedness of the prosecution for trial. *Scott v. State*, 634 S.W.2d 853 (Tex.Cr.App.1982). When the State's readiness is challenged we must determine whether the State was prepared for trial within the applicable time period. *McMahon v. State*, 630 S.W.2d 730 (Tex. App.-Houston [14th] 1982); *White v. State*, 630 S.W.2d 900 (Tex.App.-Amarillo 1982). *Taylor v. State*, 666 S.W.2d 157 (Tex.App.-Houston [14th] 1983, pet. ref'd).

Certainly, without the *presence of the defendant* the State cannot be prepared for trial, *Stokes v. State*, 666 S.W.2d 493 (Tex.Cr.App.1983). The time limits within which the State must be ready may be tolled, however, if the defendant is absent under certain circumstances. Art. 32A.02, § 4(4) & (5), V.A.C.C.P.

The concept of what constitutes readiness under the Act vis-a-vis *charging instruments* was examined in *Ward v. State*, 659 S.W.2d 643 (Tex.Cr.App.1983). There it was contended that because the misdemeanor affidavit supporting the information was not sworn to, in violation of Art. 21.22, V.A.C.C.P., the State could not have been "ready" under that information. Although such a defect would have rendered the conviction void and caused reversal on appeal, *Carter v. State*, 398 S.W.2d 290 (Tex.Cr.App.1966), the concept of "ready" does not demand that the State have a "perfect" indictment or information. Rather:

> "A defective indictment or information is treated in much the same manner as other causes for trial delay with the nature of the defect and the length and reasonableness of the delay weighed in determining whether or not the State was, in fact, not prepared for trial. [citing *Ward*, supra]"

*Carter v. State*, 702 S.W.2d 774, 777 (Tex. App.-Fort Worth 1986).

While the total failure to file an indictment or information indicates some unpreparedness for trial, see *Golden v. State*, 672 S.W.2d 895 (Tex.App.-Dallas 1984), an error such as that present in *Ward* does not (although other error or circumstances surrounding charging instrument error might so indicate, in another case). The Court in *Ward* pointed out that there was no showing of bad faith on the part of the State when it announced ready. Thus the State may be prepared for trial even though the indictment that forms the basis for the prosecution of the offense is so defective as to be void, assuming no bad faith.

No bright line rule has emerged concerning just how much or what type of *evidence* the State must have available for trial in order to be prepared for trial. Some examples, however, do exist. A showing that the "State did not have a key witness or piece of evidence available" would rebut the assertion that the State was ready, *Brown v. State*, 667 S.W.2d 630 (Tex.App.-Fort Worth 1984), *Mallard v. State*, 661 S.W.2d 268 (Tex.App.-Fort Worth 1983), as would a showing that the State had not procured the presence of a *key* witness, *McCartin v. State*, 662 S.W.2d. 794 (Tex.App.-Corpus Christi 1983, pet. ref'd) (procured in the sense of into the jurisdiction of the State—witness outside U.S. border). This is, in part, inferred from the Act itself, which excludes a period of delay because of the unavailability of material evidence. Art. 32A.02, § 4(6)(A), V.A. C.C.P.

Concerning the specific contention before us, that the State could not be ready on both of two mutually inconsistent theories of commission of an offense, we find nothing in the case law or in the Act prohibiting the State from changing theories of prosecution for a particular offense and then choosing a route which better fits the evidence. In fact we glean just the opposite from the cases discussed above and a plain reading of the Act.

■ So long as the State was "ready" or prepared to go to trial on the allegation of murder by chloroform suffocation and in good faith was ready to attempt with witnesses or evidence to persuade a jury of the first theory within the time limitations, the readiness requirements of the Act are satisfied. *Barfield v. State*, 586 S.W.2d 538 (Tex.Cr.App.1979). It is of no moment that the State may reconsider the case, change its initial position, and recharge a criminal defendant with the same offense but under theories more consistent with the evidence. The State may be ready on this second theory, regardless of its consistency with the first theory, if it in good faith has witnesses or evidence to attempt to persuade a jury of the second theory.

■ At the hearing on the motion to dismiss the indictment, the State first announced that it was ready to try the present criminal action and also that it had been ready to go to trial since the return of the first indictment against appellant. This was all the State needed to do in order to present a prima facie case of readiness and shift the burden to the appellant to show that the State was not in fact ready at some time required by the Act. *Barfield,* supra; *Ostoja v. State*, 631 S.W.2d 165 (Tex.Cr.App.1982); *Jackson v. State*, 657 S.W.2d 874 (Tex.App.-Texarkana 1984, pet. ref'd); *Weathers v. State*, 695 S.W.2d 367 (Tex.App.-San Antonio 1985, pet. ref'd). Answering this burden shift, appellant called the investigator for the district attorney's office to the stand. The investigator testified that prior to filing the written announcement of ready in the first case, he determined that all of the State's witnesses were available and that evidence was available to try the allegations of the first indictment. Far from rebutting the State's

announcement of ready, this testimony effectively demonstrated the State's readiness on the first indictment, especially in absence of a showing of bad faith in its announcement of ready.[2]

We therefore find that the State discharged its burden of demonstrating readiness for trial on the first indictment charging the offense of capital murder, and that this showing of readiness was not rebutted, even though the State later chose to prosecute the offense of murder under a different, even possibly inconsistent, theory.

We now turn to whether the State's announcement of ready for the first criminal action for the offense of capital murder "carried forward" to the second criminal action for the offense of murder.

This was the precise contention by the State that we found meritorious in *Sharp v. State*, 707 S.W.2d 611, 615 (Tex.Cr.App. 1986). There it was stated:

"The State also contends that when a subsequent indictment for the same offense is returned by the grand jury, the State's announcement of ready for the first case carries to the subsequent case a previous compliance with any speedy trial time limits." (emphasis supplied)

We accepted the State's contention and held that since the State was ready on the first indictment charging the offense of capital murder, this readiness carried over to the second indictment charging the same offense. So the State had in fact been ready since June 21, 1982, when the first indictment was returned, even though the indictment the ultimate criminal action relied upon was not returned until five months later in November.

---

2. By way of explanation, the evidence at trial showed that accomplice witness Ricky Lee Clark testified he saw appellant repeatedly pour the contents of a bottle, which had a strong smell like paint thinner, onto a rag and put the rag over the victim's mouth and nose during their fight until the victim stopped moving. The label on the bottle said "chloroform" and had a skull and cross bones symbol on it. Clark further testified that he had never smelled chloroform before and did not know if the substance was actually chloroform. The medical examiner testified that the remains of the body chemically showed traces of a solvent which could cause a person to pass out if breathed in large quantities and could cause death by a different means, for example, by lack of oxygen or by causing heart stoppage. The examiner further testified that although the decomposed body indicated the victim died by criminal means, he could not determine the actual cause of death. Ultimately, the State chose to attempt to persuade the jury under the theory furnished by this latter evidence.

Also instructive is our holding in *Whaley v. State*, 717 S.W.2d 26 (Tex.Cr.App.1986). In that case, the defendant was convicted with delivery of a controlled substance. The procedural history of the case showed the following:

1. The defendant was arrested on May 21, 1982 and charged with delivery of hydromorphone and marihuana.

2. He was indicted in Cause No, 8272 for unlawful delivery of hydromorphone and marihuana in violation of two distance statutes, the Organized Crime Act and the Controlled Substances Act.

3. The State announced ready on June 22, 1982.

4. The defendant was reindicted in Cause No. 8296 for the same offense as in the previous indictment, except that the amount of the substance was specified. Two other counts of felony possession of marihuana and hydromorphone were added.

5. The State announced ready again on August 24, 1982.

6. On November 12, 1982, the defendant was reindicted in Cause No. 8312. In addition to containing the same allegations that were in the previous two cause numbers, 8272 and 8296, this indictment contained allegations as to the manner and means of delivery of the controlled substances. The counts concerning possession of marihuana and hydromorphone were dropped.

7. The State filed a written announcement of ready, and trial commenced on December 6, 1982. The State then dropped the Organized Crime allegations.

8. The defendant was convicted of both delivery of hydromorphone and marihuana violations under the Controlled Substances Act.

Based upon these facts, the defendant claimed that the offenses alleged in the first and second indictments were different from those alleged in the final indictment, and were subject to different proofs. Therefore, the third indictment, which was not filed within the time required by the Speedy Trial Act, must be dismissed.

This Court held that the State's subsequent removal of those portions of the charges related to other offenses did not affect the proof required for delivery of the controlled substances. The Court found that the unlawful delivery charges in the first indictment were in fact subject to the same proof whether alleged under the Organized Crime Act or some other statute in the second and third indictment. Thus, the announcement of ready on June 22, 1982 carried compliance with the Speedy Trial Act forward through the second indictment to the third indictment. The defendant's ground of error was therefore overruled.

 This concept that readiness carries forward from one indictment to a subsequent indictment as long as the offense is the same offense subject to the same proof, originated in *Richardson v. State*, 629 S.W.2d 164 (Tex.App.-Dallas 1982, pet. ref'd). There, the Dallas Court of Appeals noted that third degree felony theft and burglary of a motor vehicle were different offenses subject to different proof and thus an announcement of ready in one would not carry over to a subsequent indictment alleging the other. Although we refused the State's petition for discretionary review in Richardson, the appellate court's holding was expressly approved in *Whaley*, supra:

> "In *Richardson*, supra, there were two separate offenses, burglary of a vehicle and third degree theft. Although both offenses arose from the same transaction, they were subject to different proof. For this reason the Dallas Court of Appeals correctly dismissed the second indictment, which had been returned after the time limits of the Speedy Trial Act had passed."

*Whaley*, supra at 29.

These cases indicate that as long as the subsequent indictment is for the same offense arising out of the transaction for which the defendant was originally arrested, announcements of ready by the State carry forward.

In opposition to these cases the appellant cites *Rosebury*, supra, wherein the issue was whether a *waiver* of speedy trial act rights "carried over" from one criminal

case to another. The nomenclature "case" was used because that was the wording on the waiver, which stated:

> "... and further waive my [the defendant's] right for dismissal or discharge if the State is not ready for trial within 120 days of the commencement of this case...."

This Court stated:

> "The waiver clearly applies to the case, not the transaction. The issue, therefore, reduces itself to whether the indictments constitute prosecutions for a single case or for separate cases arising out of the same transaction."

*Rosebury,* supra at 657.

Thus *Rosebury* dealt with a problem dealing with the meaning of the word "case" on a written waiver. The Speedy Trial Act, in contrast, concerns itself with offenses and criminal actions, not "cases". Moreover, the issue here is whether the State's readiness or preparedness for trial carries over from one indictment to another and this must be decided in context of the Act. We therefore find *Rosebury,* supra, inapplicable to the facts or issues before us.

■ With regard to the facts of the case at bar, the first indictment alleged the capital murder of the victim by suffocation with chloroform and the second indictment alleged murder by "manner and means unknown." The defendant was, however, arrested and charged with killing the victim. The subsequent indictment changed only the manner by which the victim was killed and eliminated the aggravating feature. Although these two offenses differ in that the first required greater proof than the second, these offenses clearly arose out of the same transaction, *viz:* the killing of the victim. They were, just as in *Whaley* and *Sharp,* supra, the same offense for purposes of the Speedy Trial Act. Thus, we find that the State's announcement of ready on the second indictment carried forward to the second and final indictment. Appellant's ground for review is overruled.

The judgments of the trial court and the Court of Appeals are affirmed.