Edward Arnold **PRUNEDA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–02–00139–CR.

Court of Appeals of Texas,
Texarkana.

Submitted March 20, 2003.

Decided April 25, 2003.

Bruce Anton, Dallas, for appellant.

Andrea M. Thompson, Appellate Asst. Dist. Atty., William M. Jennings, Gregg County Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Edward Arnold Pruneda was found guilty by a jury of possession of fifty pounds or more but less than 2,000 pounds of marihuana and was sentenced to ten years' imprisonment. He appeals, contending the trial court erred in denying his request for a jury charge on racial profiling and in denying him standing to contest the search of the rental vehicle he was driving.

Pruneda was stopped on Interstate 20 in Gregg County at approximately 11:24 p.m. for speeding.[1] The stop was made by State Trooper Bob Powell. Pruneda was driving a minivan and was its only occupant. Powell testified that, after making the stop, he approached the minivan on the passenger side and that he was using his flashlight. As he approached the vehicle, he observed a large bundle under a blanket in the back, a small black "carry-on bag" behind the driver's seat, and a radar detector on the dash. Powell asked Pruneda to step to the back of the vehicle. On meeting Pruneda at the back of the vehicle, Powell identified himself, informed Pruneda of the reason for the stop, and asked to see his driver's license. Powell testified that, as Pruneda was taking his driver's license out of his wallet, "his hands [were] shaking tremendously" and that he was "extremely nervous." Powell admitted on cross-examination that it was extremely cold that evening, but testified

that Pruneda was wearing a jacket and had just stepped out of the vehicle. Powell asked Pruneda who owned the vehicle, and Pruneda informed him the minivan was a rental vehicle. When Powell asked the name of the person who rented it, Pruneda first answered a friend had rented it, but then quickly said his brother rented it for him. Powell then returned to his patrol vehicle and ran a check on Pruneda's driver's license and on the vehicle's registration tag. He also called for a back-up unit. After the checks on the driver's license and the registration tag returned clear, Powell decided to only give Pruneda a warning ticket for the speeding, but testified he did not feel the investigation was over. Powell believed some type of criminal activity was occurring. He based this belief on Pruneda's extreme nervousness, his inconsistent answers as to who had rented the vehicle, and his concern about what was in the back of the vehicle. Powell therefore returned to question Pruneda further concerning the rental agreement.

Pruneda appeared uncertain about who had rented the minivan and gave Powell the name of "Earnest." Powell asked for and received the rental agreement and discovered the vehicle was rented to Jimmy Hernandez. The rental agreement required any additional drivers to be listed on the agreement, and those additional drivers must have presented their driver's licenses to the rental store for approval to drive the vehicle. Earnest Hernandez was listed as an additional driver for this vehicle, but Pruneda was not.

At this point, Powell asked Pruneda for consent to search the vehicle. At first, Pruneda answered it was up to the officer whether to search, but when Powell said it

---

1. Pruneda was traveling seventy-three miles per hour in a sixty-five mile-per-hour zone.

was up to Pruneda whether he searched, Pruneda asked what would happen if he said no to the search. Powell told Pruneda he would call for the drug dog. At this point, Pruneda consented to the search of the vehicle. Powell found two boxes under the blanket in the back of the vehicle. The crime laboratory confirmed the boxes contained, respectively, one hundred and ninety-nine pounds of marihuana.

As his first point of error, Pruneda contends the trial court erred in denying his request for a jury charge regarding racial profiling. According to Pruneda, his detention became improper and beyond the scope of a traffic stop at the point Powell checked his driver's license, found a clean record, and made the decision to issue Pruneda a warning ticket. Pruneda contends the purpose of the stop ended at the time the decision had been made to issue a warning ticket, and the questioning concerning the rental agreement and all that followed was beyond the scope of the traffic stop. Pruneda maintains the further investigation and detention was because he was Hispanic.

Under Texas law, a peace officer may not engage in racial profiling. TEX. CODE CRIM. PROC. ANN. art. 2.131 (Vernon Supp.2003). Racial profiling means a law enforcement-initiated action was based on an individual's race, ethnicity, or national origin rather than on the individual's behavior or on information identifying the individual as having engaged in criminal activity. TEX.CODE CRIM. PROC. ANN. art. 3.05 (Vernon Supp.2003). If evidence is illegally obtained, it may not be used against a defendant in a criminal trial. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2003). Article 38.23(a) provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

But, a trial court is required to include an Article 38.23 instruction in the jury charge only if there is a factual dispute as to how the evidence was obtained. *Balentine v. State,* 71 S.W.3d 763, 773 (Tex.Crim.App. 2002).

Pruneda contends the jury should have been given an instruction on racial profiling, allowing them to disregard any evidence obtained after the time he purports the purpose of the traffic stop had ended. However, there was no evidence presented at trial to show the further detention of Pruneda was based on racial profiling. Powell testified he did not engage in racial profiling. Instead, he said the detention was based on Pruneda's nervous behavior, his inconsistencies concerning the rental agreement, and the bundle in the back of the minivan. Powell testified that, in his experience, the circumstances suggested criminal activity. There was no controverting evidence presented suggesting the further detention was based on Pruneda's race. For example, Pruneda offered no statistical data that the police department, or that Powell in particular, had engaged in racial profiling in the past. Further, nowhere in Pruneda's testimony did he indicate he was singled out because of his race. The only mention of racial profiling was during Powell's cross-examination, where he adamantly denied engaging in racial profiling:

[Defense counsel]:.... The decision to keep him from beyond—the decision that instead of issuing a warning ticket, you're going to call for the canine unit, call for the backup, and hold him there further, was that, in any way, based on the fact that he's Hispanic and out of state?

[Powell]: No, sir. I stop a lot of people on the side of the road. I had no idea who he was when I stop [sic] the vehicle. At the time I stopped the vehicle, whether or not he's Hispanic, white, black, Asian, it doesn't matter to me. If I feel like everything's okay, I will let them go. But under the circumstances, and under my past experience of working as a Trooper on the highways, that's the reason why I kept him. I thought there was enough [probable cause] to ... ask him for his consent to search the vehicle.

Because there was no factual dispute about whether the evidence was obtained as a result of racial profiling, the trial court did not err in refusing an instruction to the jury on racial profiling. Pruneda's first point of error is overruled.

■ As his second point, Pruneda contends the trial court erred in denying him standing to contest the search. An accused individual has standing under either the Fourth Amendment to the United States Constitution, or under Article I, Section 9 of the Texas Constitution, to challenge admission of evidence obtained by governmental intrusion only if he or she had a legitimate expectation of privacy in the place invaded. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *see* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. The purpose of both constitutional provisions is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions. *Villarreal*, 935 S.W.2d at 138. To establish

an expectation of privacy, the accused must show (a) that by his or her conduct, he or she exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his or her subjective expectation as objectively reasonable. *Id.*

■ A person driving a rental vehicle does not have standing to challenge a search of the vehicle if his or her driving of the vehicle is prohibited by the vehicle rental agreement, even if such person had the permission of the person who rented the vehicle. *Freeman v. State*, 62 S.W.3d 883, 889 (Tex.App.-Texarkana 2001, pet. ref'd); *Rovnak v. State*, 990 S.W.2d 863, 871 (Tex.App.-Texarkana 1999, pet. ref'd). While a third party driving a rental vehicle may be able to show that, by his or her conduct, he or she exhibited an actual subjective expectation of privacy, that third party cannot meet the burden of showing his or her subjective expectation was one society would recognize as objectively reasonable under the circumstances because that party has no property or possessory interest in the vehicle. *See Rovnak*, 990 S.W.2d at 871.

■ Pruneda testified he had permission from Hernandez, the person who rented the vehicle. Nonetheless, Pruneda was prohibited by the terms of the rental agreement from driving the vehicle. Under the terms of the agreement, additional drivers were required to be listed on the rental agreement and to present their driver's licenses to the rental store for approval. Because Pruneda was not authorized under the terms of the rental agreement to drive this vehicle, he lacked standing to challenge the search of the vehicle. We overrule his second point of error.

■ Pruneda additionally argues in his brief that, "Standing in the vehicle aside, Appellant had standing to contest the detention of his person and statements drawn from him." We agree that a person may have standing to contest the detention of his or her person even if he or she does not have standing to contest the search of a rental vehicle such person was driving. *See Freeman,* 62 S.W.3d at 889. However, Pruneda predicated his contention the stop was illegal on a finding of racial profiling. As addressed above, we have found no evidence of racial profiling. Accordingly, Pruneda's alternative contention is likewise overruled.

We affirm the judgment.