

## NUMBER 13-08-00212-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| PATRICK DEON MOODY, | Appellant, |
| v. | |
| THE STATE OF TEXAS, | Appellee. |

### On appeal from the 103rd District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Rodriguez**

Appellant Patrick Deon Moody appeals his conviction for third-degree felony possession of marihuana in an amount fifty pounds or less but more than five pounds. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(4) (Vernon 2003). The trial court sentenced Moody to eight years' confinement. Moody challenges his conviction by two

issues: (1) that testimony by the State's police officer witnesses was legally insufficient evidence that the seized contraband was marihuana because the witnesses were not properly established as experts; and (2) that the evidence found during the police's stop of Moody should have been suppressed because it was obtained as a result of an illegal pretextual stop based on racial profiling. We affirm.

## I. BACKGROUND

On the night of December 8, 2006, Moody carried two boxes into the Federal Express (FedEx) store located at the Valley International Airport in Harlingen, Texas. He inquired about the cost of shipping the boxes and ultimately decided not to ship them because the price of Saturday shipping was too expensive. Moody's co-defendant, Gregory Griffin,[1] was waiting for Moody outside the store, and when Moody exited the store, the two men loaded the boxes into the back of a white Toyota Highlander. Griffin then drove the Highlander out of the FedEx parking lot.

Investigator Jose F. Garcia of the Harlingen Police Department was present at FedEx when Moody arrived because store employees had called the police earlier to investigate a package containing marihuana. Garcia observed Moody and Griffin outside the store and became suspicious. In the meantime, Harlingen police received a tip from a FedEx employee that a man matching Moody's description was attempting to drop off some suspicious boxes. Based on his observations and the tip, Garcia radioed Investigator Raul Flores for assistance. Flores arrived at the scene in time to see Moody

---

[1] We have previously addressed Griffin's appeal. *See Griffin v. State*, No. 13-08-00089-CR, 2008 WL 5170391 (Tex. App.–Corpus Christi Aug. 28, 2008, pet. ref'd) (mem. op., not designated for publication). In our decision, we affirmed the order of the trial court denying Griffin's motion to suppress the stop of his vehicle and the evidence obtained from the search by Harlingen police. *See id*. at *3.

and Griffin load the two boxes into the Highlander. Flores then followed the Highlander out of the parking lot in his unmarked car while Garcia entered the store to question the employee who helped Moody with his package.

Moody and Griffin were eventually stopped by a marked police car allegedly for speeding. Flores arrived at the stop, detected the odor of dryer sheets and moth balls coming from the Highlander, and discovered the two boxes were no longer in the car; Flores ordered the uniformed officer who stopped Moody and Griffin to detain them so Flores could investigate. Flores and Garcia then retraced Moody and Griffin's route from FedEx to the location of the traffic stop and found two boxes on the side of the road. A K-9 unit was called to investigate, and marihuana was found in the boxes. The boxes also contained dryer sheets and moth balls. Moody and Griffin were arrested. A subsequent search of Moody and Griffin's motel room uncovered the same type of dryer sheets and mothballs found in the Highlander and boxes containing the marihuana.

The grand jury indicted Moody for possession of a usable quantity of marihuana in an amount fifty pounds or less but more than five pounds. Moody pleaded not guilty to the charge and filed a motion to suppress the traffic stop. At the hearing on the motion to suppress, both Garcia and Flores testified. Garcia testified that, while he was sitting in his truck outside FedEx after retrieving the earlier reported contraband, he saw Moody and Griffin outside the store with two boxes on the ground between them. Garcia observed Moody enter the store with the boxes and, shortly thereafter, exit the store still in possession of the boxes. Garcia testified that Griffin appeared as if he was acting as a look-out while Moody was in the FedEx store. According to Garcia, this FedEx location, especially during the last hours before closing, is known as a particularly high trafficking

3

location for narcotics shipping out of the Rio Grande Valley to other parts of the United States. Garcia testified that he had previously seized similar shipments of marihuana at this location. Garcia explained further that, in this situation, the FedEx clerk had become suspicious of Moody because she thought the address Moody provided on the shipping form was fabricated and that suspicion led FedEx to call the police with the tip regarding Moody.

In Flores's testimony at the suppression hearing, he described his pursuit of Moody and Griffin. Flores testified that, after leaving the FedEx parking lot, the Highlander pulled into an Exxon convenience store parking lot, seemingly to fill up with gas, but the car then quickly exited the parking lot. He continued to follow the Highlander. Flores testified that, after leaving the convenience store parking lot, the Highlander increased its speed, and by pacing his car in comparison with the Highlander, Flores determined that Moody and Griffin's car was traveling at speeds in excess of eighty miles per hour on a road with a forty-five mile per hour speed limit. He stated that the Highlander slowed to make a turn at a T-intersection, rolling through the stop sign. Flores then radioed police dispatch to request assistance from a marked car to make a traffic stop. Flores testified that, from the time it left the FedEx parking lot to the time of the traffic stop, he never lost sight of the Highlander.

After the hearing, the trial court denied Moody's motion to suppress the traffic stop.[2] Moody's case was tried to a jury on January 29, 2008. At trial, the State presented

---

[2] Moody also moved to suppress the statements he made to police after being arrested. The trial court granted that portion of his motion, so it is not an issue in this appeal.

4

testimony from Garcia, Flores, and Ramiro Martinez, the K-9 officer called to the location where the boxes were found, who all identified the substance in the seized boxes as marihuana. The jury returned a guilty verdict, and the court sentenced Moody to eight years' confinement. This appeal ensued.

## II. DISCUSSION

By two issues, Moody challenges his conviction. First, Moody argues that the evidence was legally insufficient to prove that the seized contraband was marihuana because the State's police officer witnesses—Garcia, Flores, and Martinez—were never established as experts qualified to identify marihuana. Second, Moody contends that the evidence found during the police's stop of the Highlander should have been suppressed because it was obtained as a result of an illegal pretextual stop based on racial profiling.

### A. Legal Sufficiency

#### 1. Standard of Review

In conducting a legal sufficiency review, we view the relevant evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

2. Analysis

At trial, the State proffered the testimony of three experienced police officers to prove the contraband seized from the two boxes was marihuana. Garcia testified that he had eight years of experience investigating drug cases, the majority of which were marihuana cases. Flores stated that he had a total of seven years experience as a police officer and three years experience as a narcotics officer in particular. Both Garcia and Flores had participated in training courses in which they learned the methods and operations employed by drug traffickers. Garcia testified that he has received specialized training regarding package, airport, bus, and highway interdiction. Martinez, the K-9 officer, also testified that he was experienced at identifying marihuana—that from his years of experience, he could recognize it by its strong odor.

The Texas Court of Criminal Appeals has consistently held that experienced police officers are "qualified to testify that a green leafy plant substance is marihuana." *Houlihan v. State*, 551 S.W.2d 719, 724 (Tex. Crim. App. 1977) (citing *Miller v. State*, 330 S.W.2d 466 (Tex. Crim. App. 1959)); *Deshong v. State*, 625 S.W.2d 327, 329-30 (Tex. Crim. App. 1981). Our court has also applied this general rule. *See Campos v. State*, 716 S.W.2d 584, 588 (Tex. App.–Corpus Christi 1986, no pet.) (holding that the testimony of an experienced police officer was sufficient to identify the substance as marihuana); *see also Morales v. State*, No. 13-98-00555-CR, 2000 WL 34251157, at *14 (Tex. App.–Corpus Christi Aug. 31, 2000, no pet.) (mem. op., not designated for publication).

All three police officers—Garcia, Flores, and Martinez—identified the substance in the seized boxes as marihuana. Garcia and Flores recognized the substance as

6

marihuana by sight. The State introduced the bundles found in the boxes as evidence at trial, and both Garcia and Flores testified that the bundles introduced as evidence were the bundles contained in the seized boxes and that the substance in the bundles was marihuana. Martinez testified that, on the night of the crime, he detected the strong scent of marihuana when Garcia opened the boxes at the scene. Moreover, the jury had before it the actual drugs; based on the officer's testimony and its own examination of the evidence, the jury was well within its province to find the substance was, indeed, marihuana. *See King*, 29 S.W.3d at 562.

Therefore, viewing this evidence in the light most favorable to the verdict, we conclude that the evidence was legally sufficient to establish that the substance seized from the two boxes was marihuana. *See Hooper*, 214 S.W.3d at 13. We credit the testimony of the experienced police officers who identified the contraband and, based on the testimony and evidence at trial, conclude that the jury's decision was rational. *See Houlihan*, 551 S.W.2d at 724; *Beckham*, 29 S.W.3d at 151. Moody's first issue is overruled.

B. Suppression

By his second issue, Moody contends that the trial court erred in denying his motion to suppress the stop of the Highlander because the stop was the result of racial profiling.[3]

---

[3] In his second issue, Moody complains of racial profiling and argues that the trial court erred in denying his motion for directed verdict. However, Moody has not preserved this complaint, because he did not move for a directed verdict on the basis of racial profiling. *See* TEX. R. APP. P. 33.1; *see also Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that where an appellant's trial objection "does not comport with" the issue he raises on appeal, he has not preserved the issue for review).

Additionally, Moody argues that the trial court erred in failing to instruct the jury regarding the racial profiling issue pursuant to article 38.23 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN.

7

1.  Standard of Review and Applicable Law

A trial court's decision on a motion to suppress evidence is reviewed for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We view the record in the light most favorable to the trial court's ruling and defer to the trial court's determination of historical facts; however, the court's application of the law of search and seizure to those facts is reviewed de novo. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *Dixon*, 206 S.W.3d at 590; *Guzman v. State*, 955 S.W.2d 87, 89 (Tex. Crim. App. 1997).

"Stopping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of the Fourth Amendment. A peace officer's decision to stop an automobile is reasonable under the Fourth Amendment when the officer has probable cause to believe the driver committed a traffic offense." *Morrison v. State*, 71 S.W.3d 821, 827 (Tex. App.–Corpus Christi 2002, no pet.) (citations omitted). Because this is an objective standard, the subjective intent of the officer making the stop is irrelevant, and we must only determine whether there was an objective basis for the stop. *Garcia v. State*, 43 S.W.3d

_____

art. 38.23(a) (Vernon 2005) ("In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was [illegally] obtained . . . the jury shall disregard any such evidence so obtained."). Here, there was no disputed issue of fact to warrant a jury instruction regarding racial profiling. *See Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007) (holding that a "defendant's right to the submission of a jury argument . . . is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible."). To raise a fact issue mandating a jury instruction under article 38.23, the defendant must put on "some affirmative evidence" of the fact. *Id*. at 513. The questions of defense counsel on cross-examination do not create disputed issues of fact, especially in light of adamant denials by the questioned witness. *See id*.; *Pruneda v. State*, 104 S.W.3d 302, 305 (Tex. App.–Texarkana 2003, pet. ref'd). During cross examination of the State's police officer witnesses, Moody's counsel accused the officers of racial profiling. However, the officers firmly denied counsel's allegations. These exchanges between the witnesses and Moody's counsel did not create a disputed fact regarding racial profiling, and thus, Moody was not entitled to a jury instruction on the issue. *See Pruneda*, 104 S.W.3d at 305.

8

527, 530 (Tex. Crim. App. 2001); *see Crittenden v. State*, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995) (holding that "an objectively valid traffic stop is not unlawful . . . just because the detaining officer had some ulterior motive for making it").

The law prohibits police officers from engaging in racial profiling. TEX. CODE CRIM. PROC. ANN. art 2.131 (Vernon 2005). Racial profiling is defined as "a law enforcement-initiated action based on an individual's race, ethnicity, or national origin rather than on the individual's behavior or on information identifying the individual as having engaged in criminal activity." *Id*. art. 3.05 (Vernon 2005). Evidence illegally obtained through racial profiling may not be used against a defendant in a criminal proceeding. *Id*. art. 38.23(a) (Vernon 2005); *see Pruneda v. State*, 104 S.W.3d 302, 305 (Tex. App.–Texarkana 2003, pet. ref'd).

2. Analysis

The State argues that Moody waived his argument regarding racial profiling because he did not raise the issue at the hearing on his motion to suppress. Assuming without deciding that the issue was not waived and is properly before this Court, we nonetheless conclude there is no evidence of racial profiling in the record of the suppression hearing. Instead, the hearing record reveals that: (1) the Fed Ex store at which Moody was initially observed was a location through which high volumes of drugs were trafficked; (2) Griffin appeared to be acting as a look-out while Moody entered the store with one of the boxes; (3) Moody seemed nervous and acted suspiciously when he entered the store, prompting FedEx employees to call in a tip to the police; (4) after the Highlander left the Exxon parking lot, it traveled at a high rate of speed, which Flores determined to be in excess of

9

eighty miles per hour in a forty-five mile per hour zone; and (5) the Highlander failed to make a complete stop at a stop sign as it turned onto another road.

The only discussions of race in the evidence are defense counsel's questions regarding race and Garcia and Flores's emphatic denials that Moody and Griffin's race played any role in their decision to investigate the situation. But the questions of counsel on cross-examination—-especially when accompanied by the adamant denials of the witnesses in response—are not sufficient to show that the stop of the Highlander was predicated on racial profiling, and we will not contradict the findings of the trial court to conclude as such. *See Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007) (holding that "a cross-examiner's questions" do not create evidence of a particular fact); *Pruneda*, 104 S.W.3d at 305-06 (concluding that there was no evidence of racial profiling where the questioned officer adamantly denied engaging in racial profiling); *see also Wiede*, 214 S.W.3d at 24 (holding that the reviewing court must defer to the findings of the trial court in reviewing a motion to suppress). Instead, we conclude that there was an objective basis for the stop of the Highlander—specifically, the car was traveling at speeds well in excess of the posted speed limit, and it failed to make a complete stop at a stop sign. *See Garcia*, 43 S.W.3d at 530; *see also Carter v. State*, No. 07-07-00157-CR, 2009 WL 857501, at *6 (Tex. App.–Amarillo Apr. 1, 2009, pet. filed) (holding that an officer's stop was not based on racial profiling, and therefore proper, where the officer stopped the defendant for a traffic violation). Moreover, the State presented ample evidence proving that the officers involved had reasonable suspicions about Moody's actions based on his "behavior" and other "information identifying [Moody] as having engaged in criminal

activity." *See* Tᴇx. Cᴏᴅᴇ. Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. art. 3.05; *see also Carter*, 2009 WL 857501, at *6 (affirming the trial court's denial of the defendant's motion to suppress on the basis of racial profiling because the officer had other, proper reasons for stopping the defendant). Viewing the record in the light most favorable to the trial court's ruling, we cannot conclude that the court abused its discretion in denying Moody's motion to suppress. *See Dixon*, 206 S.W.3d at 590. Accordingly, we overrule Moody's second issue.

## III. CONCLUSION

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Memorandum Opinion delivered and
filed this 26th day of August, 2009.