NUMBER 13-08-00212-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


PATRICK DEON MOODY, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 103rd District Court 

of Cameron County, Texas.

 


MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Vela 


Memorandum Opinion by Justice Rodriguez



 Appellant Patrick Deon Moody appeals his conviction for third-degree felony
possession of marihuana in an amount fifty pounds or less but more than five pounds. See
Tex. Health & Safety Code Ann. § 481.121(a), (b)(4) (Vernon 2003). The trial court
sentenced Moody to eight years' confinement. Moody challenges his conviction by two
issues: (1) that testimony by the State's police officer witnesses was legally insufficient
evidence that the seized contraband was marihuana because the witnesses were not
properly established as experts; and (2) that the evidence found during the police's stop
of Moody should have been suppressed because it was obtained as a result of an illegal
pretextual stop based on racial profiling. We affirm.

I. BACKGROUND

 On the night of December 8, 2006, Moody carried two boxes into the Federal
Express (FedEx) store located at the Valley International Airport in Harlingen, Texas. He
inquired about the cost of shipping the boxes and ultimately decided not to ship them
because the price of Saturday shipping was too expensive. Moody's co-defendant,
Gregory Griffin, (1) was waiting for Moody outside the store, and when Moody exited the
store, the two men loaded the boxes into the back of a white Toyota Highlander. Griffin
then drove the Highlander out of the FedEx parking lot.

 Investigator Jose F. Garcia of the Harlingen Police Department was present at
FedEx when Moody arrived because store employees had called the police earlier to
investigate a package containing marihuana. Garcia observed Moody and Griffin outside
the store and became suspicious. In the meantime, Harlingen police received a tip from
a FedEx employee that a man matching Moody's description was attempting to drop off
some suspicious boxes. Based on his observations and the tip, Garcia radioed
Investigator Raul Flores for assistance. Flores arrived at the scene in time to see Moody
and Griffin load the two boxes into the Highlander. Flores then followed the Highlander out
of the parking lot in his unmarked car while Garcia entered the store to question the
employee who helped Moody with his package. 

 Moody and Griffin were eventually stopped by a marked police car allegedly for 
speeding. Flores arrived at the stop, detected the odor of dryer sheets and moth balls
coming from the Highlander, and discovered the two boxes were no longer in the car;
Flores ordered the uniformed officer who stopped Moody and Griffin to detain them so
Flores could investigate. Flores and Garcia then retraced Moody and Griffin's route from
FedEx to the location of the traffic stop and found two boxes on the side of the road. A K-9
unit was called to investigate, and marihuana was found in the boxes. The boxes also
contained dryer sheets and moth balls. Moody and Griffin were arrested. A subsequent
search of Moody and Griffin's motel room uncovered the same type of dryer sheets and
mothballs found in the Highlander and boxes containing the marihuana.

 The grand jury indicted Moody for possession of a usable quantity of marihuana in
an amount fifty pounds or less but more than five pounds. Moody pleaded not guilty to the
charge and filed a motion to suppress the traffic stop. At the hearing on the motion to
suppress, both Garcia and Flores testified. Garcia testified that, while he was sitting in his
truck outside FedEx after retrieving the earlier reported contraband, he saw Moody and
Griffin outside the store with two boxes on the ground between them. Garcia observed
Moody enter the store with the boxes and, shortly thereafter, exit the store still in
possession of the boxes. Garcia testified that Griffin appeared as if he was acting as a
look-out while Moody was in the FedEx store. According to Garcia, this FedEx location,
especially during the last hours before closing, is known as a particularly high trafficking
location for narcotics shipping out of the Rio Grande Valley to other parts of the United
States. Garcia testified that he had previously seized similar shipments of marihuana at
this location. Garcia explained further that, in this situation, the FedEx clerk had become
suspicious of Moody because she thought the address Moody provided on the shipping
form was fabricated and that suspicion led FedEx to call the police with the tip regarding
Moody.

 In Flores's testimony at the suppression hearing, he described his pursuit of Moody
and Griffin. Flores testified that, after leaving the FedEx parking lot, the Highlander pulled
into an Exxon convenience store parking lot, seemingly to fill up with gas, but the car then
quickly exited the parking lot. He continued to follow the Highlander. Flores testified that,
after leaving the convenience store parking lot, the Highlander increased its speed, and by
pacing his car in comparison with the Highlander, Flores determined that Moody and
Griffin's car was traveling at speeds in excess of eighty miles per hour on a road with a
forty-five mile per hour speed limit. He stated that the Highlander slowed to make a turn
at a T-intersection, rolling through the stop sign. Flores then radioed police dispatch to
request assistance from a marked car to make a traffic stop. Flores testified that, from the
time it left the FedEx parking lot to the time of the traffic stop, he never lost sight of the
Highlander. 

 After the hearing, the trial court denied Moody's motion to suppress the traffic stop. (2) 
Moody's case was tried to a jury on January 29, 2008. At trial, the State presented
testimony from Garcia, Flores, and Ramiro Martinez, the K-9 officer called to the location
where the boxes were found, who all identified the substance in the seized boxes as
marihuana. The jury returned a guilty verdict, and the court sentenced Moody to eight
years' confinement. This appeal ensued.

II. DISCUSSION

 By two issues, Moody challenges his conviction. First, Moody argues that the
evidence was legally insufficient to prove that the seized contraband was marihuana
because the State's police officer witnesses--Garcia, Flores, and Martinez--were never
established as experts qualified to identify marihuana. Second, Moody contends that the
evidence found during the police's stop of the Highlander should have been suppressed
because it was obtained as a result of an illegal pretextual stop based on racial profiling.

A. Legal Sufficiency

 1. Standard of Review

 In conducting a legal sufficiency review, we view the relevant evidence in the light
most favorable to the verdict to determine whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19
(1979)); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). We do not
reevaluate the weight and credibility of the evidence, and we do not substitute our own
judgment for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000)
(en banc); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.] 2000,
pet. ref'd). Instead, we consider whether the jury reached a rational decision. Beckham,
29 S.W.3d at 151.

 2. Analysis

 At trial, the State proffered the testimony of three experienced police officers to
prove the contraband seized from the two boxes was marihuana. Garcia testified that he 
had eight years of experience investigating drug cases, the majority of which were
marihuana cases. Flores stated that he had a total of seven years experience as a police
officer and three years experience as a narcotics officer in particular. Both Garcia and
Flores had participated in training courses in which they learned the methods and
operations employed by drug traffickers. Garcia testified that he has received specialized
training regarding package, airport, bus, and highway interdiction. Martinez, the K-9 officer,
also testified that he was experienced at identifying marihuana--that from his years of
experience, he could recognize it by its strong odor.

 The Texas Court of Criminal Appeals has consistently held that experienced police
officers are "qualified to testify that a green leafy plant substance is marihuana." Houlihan
v. State, 551 S.W.2d 719, 724 (Tex. Crim. App. 1977) (citing Miller v. State, 330 S.W.2d
466 (Tex. Crim. App. 1959)); Deshong v. State, 625 S.W.2d 327, 329-30 (Tex. Crim. App.
1981). Our court has also applied this general rule. See Campos v. State, 716 S.W.2d
584, 588 (Tex. App.-Corpus Christi 1986, no pet.) (holding that the testimony of an
experienced police officer was sufficient to identify the substance as marihuana); see also
Morales v. State, No. 13-98-00555-CR, 2000 WL 34251157, at *14 (Tex. App.-Corpus
Christi Aug. 31, 2000, no pet.) (mem. op., not designated for publication).

 All three police officers--Garcia, Flores, and Martinez--identified the substance in
the seized boxes as marihuana. Garcia and Flores recognized the substance as
marihuana by sight. The State introduced the bundles found in the boxes as evidence at
trial, and both Garcia and Flores testified that the bundles introduced as evidence were the
bundles contained in the seized boxes and that the substance in the bundles was
marihuana. Martinez testified that, on the night of the crime, he detected the strong scent
of marihuana when Garcia opened the boxes at the scene. Moreover, the jury had before
it the actual drugs; based on the officer's testimony and its own examination of the
evidence, the jury was well within its province to find the substance was, indeed,
marihuana. See King, 29 S.W.3d at 562. 

 Therefore, viewing this evidence in the light most favorable to the verdict, we
conclude that the evidence was legally sufficient to establish that the substance seized
from the two boxes was marihuana. See Hooper, 214 S.W.3d at 13. We credit the
testimony of the experienced police officers who identified the contraband and, based on
the testimony and evidence at trial, conclude that the jury's decision was rational. See
Houlihan, 551 S.W.2d at 724; Beckham, 29 S.W.3d at 151. Moody's first issue is
overruled.

B. Suppression

 By his second issue, Moody contends that the trial court erred in denying his motion
to suppress the stop of the Highlander because the stop was the result of racial profiling. (3) 1. Standard of Review and Applicable Law

 A trial court's decision on a motion to suppress evidence is reviewed for abuse of
discretion. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We view the
record in the light most favorable to the trial court's ruling and defer to the trial court's
determination of historical facts; however, the court's application of the law of search and
seizure to those facts is reviewed de novo. Wiede v. State, 214 S.W.3d 17, 24 (Tex. Crim.
App. 2007); Dixon, 206 S.W.3d at 590; Guzman v. State, 955 S.W.2d 87, 89 (Tex. Crim.
App. 1997).

 "Stopping an automobile and detaining its occupants constitutes a 'seizure' within
the meaning of the Fourth Amendment. A peace officer's decision to stop an automobile
is reasonable under the Fourth Amendment when the officer has probable cause to believe
the driver committed a traffic offense." Morrison v. State, 71 S.W.3d 821, 827 (Tex.
App.-Corpus Christi 2002, no pet.) (citations omitted). Because this is an objective
standard, the subjective intent of the officer making the stop is irrelevant, and we must only
determine whether there was an objective basis for the stop. Garcia v. State, 43 S.W.3d
527, 530 (Tex. Crim. App. 2001); see Crittenden v. State, 899 S.W.2d 668, 674 (Tex. Crim.
App. 1995) (holding that "an objectively valid traffic stop is not unlawful . . . just because
the detaining officer had some ulterior motive for making it").

 The law prohibits police officers from engaging in racial profiling. Tex. Code Crim.
Proc. Ann. art 2.131 (Vernon 2005). Racial profiling is defined as "a law enforcement-initiated action based on an individual's race, ethnicity, or national origin rather than on the
individual's behavior or on information identifying the individual as having engaged in
criminal activity." Id. art. 3.05 (Vernon 2005). Evidence illegally obtained through racial
profiling may not be used against a defendant in a criminal proceeding. Id. art. 38.23(a)
(Vernon 2005); see Pruneda v. State, 104 S.W.3d 302, 305 (Tex. App.-Texarkana 2003,
pet. ref'd). 

 2. Analysis

 The State argues that Moody waived his argument regarding racial profiling because
he did not raise the issue at the hearing on his motion to suppress. Assuming without
deciding that the issue was not waived and is properly before this Court, we nonetheless
conclude there is no evidence of racial profiling in the record of the suppression hearing. 
Instead, the hearing record reveals that: (1) the Fed Ex store at which Moody was initially
observed was a location through which high volumes of drugs were trafficked; (2) Griffin
appeared to be acting as a look-out while Moody entered the store with one of the boxes;
(3) Moody seemed nervous and acted suspiciously when he entered the store, prompting
FedEx employees to call in a tip to the police; (4) after the Highlander left the Exxon
parking lot, it traveled at a high rate of speed, which Flores determined to be in excess of
eighty miles per hour in a forty-five mile per hour zone; and (5) the Highlander failed to
make a complete stop at a stop sign as it turned onto another road. 

 The only discussions of race in the evidence are defense counsel's questions
regarding race and Garcia and Flores's emphatic denials that Moody and Griffin's race
played any role in their decision to investigate the situation. But the questions of counsel
on cross-examination--especially when accompanied by the adamant denials of the
witnesses in response--are not sufficient to show that the stop of the Highlander was
predicated on racial profiling, and we will not contradict the findings of the trial court to
conclude as such. See Madden v. State, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007)
(holding that "a cross-examiner's questions" do not create evidence of a particular fact);
Pruneda, 104 S.W.3d at 305-06 (concluding that there was no evidence of racial profiling
where the questioned officer adamantly denied engaging in racial profiling); see also
Wiede, 214 S.W.3d at 24 (holding that the reviewing court must defer to the findings of the
trial court in reviewing a motion to suppress). Instead, we conclude that there was an
objective basis for the stop of the Highlander--specifically, the car was traveling at speeds
well in excess of the posted speed limit, and it failed to make a complete stop at a stop
sign. See Garcia, 43 S.W.3d at 530; see also Carter v. State, No. 07-07-00157-CR, 2009
WL 857501, at *6 (Tex. App.-Amarillo Apr. 1, 2009, pet. filed) (holding that an officer's stop
was not based on racial profiling, and therefore proper, where the officer stopped the
defendant for a traffic violation). Moreover, the State presented ample evidence proving
that the officers involved had reasonable suspicions about Moody's actions based on his
"behavior" and other "information identifying [Moody] as having engaged in criminal
activity." See Tex. Code. Crim. Proc. Ann. art. 3.05; see also Carter, 2009 WL 857501,
at *6 (affirming the trial court's denial of the defendant's motion to suppress on the basis
of racial profiling because the officer had other, proper reasons for stopping the
defendant). Viewing the record in the light most favorable to the trial court's ruling, we
cannot conclude that the court abused its discretion in denying Moody's motion to
suppress. See Dixon, 206 S.W.3d at 590. Accordingly, we overrule Moody's second
issue.

III. CONCLUSION

 The judgment of the trial court is affirmed. 

 NELDA V. RODRIGUEZ

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 26th day of August, 2009.
1. We have previously addressed Griffin's appeal. See Griffin v. State, No. 13-08-00089-CR, 2008
WL 5170391 (Tex. App.-Corpus Christi Aug. 28, 2008, pet. ref'd) (mem. op., not designated for publication). 
In our decision, we affirmed the order of the trial court denying Griffin's motion to suppress the stop of his
vehicle and the evidence obtained from the search by Harlingen police. See id. at *3. 
2. Moody also moved to suppress the statements he made to police after being arrested. The trial
court granted that portion of his motion, so it is not an issue in this appeal.
3. In his second issue, Moody complains of racial profiling and argues that the trial court erred in
denying his motion for directed verdict. However, Moody has not preserved this complaint, because he did
not move for a directed verdict on the basis of racial profiling. See Tex. R. App. P. 33.1; see also Resendiz
v. State, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that where an appellant's trial objection "does
not comport with" the issue he raises on appeal, he has not preserved the issue for review). 


 Additionally, Moody argues that the trial court erred in failing to instruct the jury regarding the racial
profiling issue pursuant to article 38.23 of the code of criminal procedure. See Tex. Code Crim. Proc. Ann.
art. 38.23(a) (Vernon 2005) ("In any case where the legal evidence raises an issue hereunder, the jury shall
be instructed that if it believes, or has reasonable doubt, that the evidence was [illegally] obtained . . . the jury
shall disregard any such evidence so obtained."). Here, there was no disputed issue of fact to warrant a jury
instruction regarding racial profiling. See Madden v. State, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007)
(holding that a "defendant's right to the submission of a jury argument . . . is limited to disputed issues of fact
that are material to his claim of a constitutional or statutory violation that would render evidence
inadmissible."). To raise a fact issue mandating a jury instruction under article 38.23, the defendant must put
on "some affirmative evidence" of the fact. Id. at 513. The questions of defense counsel on cross-examination do not create disputed issues of fact, especially in light of adamant denials by the questioned
witness. See id.; Pruneda v. State, 104 S.W.3d 302, 305 (Tex. App.-Texarkana 2003, pet. ref'd). During
cross examination of the State's police officer witnesses, Moody's counsel accused the officers of racial
profiling. However, the officers firmly denied counsel's allegations. These exchanges between the witnesses
and Moody's counsel did not create a disputed fact regarding racial profiling, and thus, Moody was not entitled
to a jury instruction on the issue. See Pruneda, 104 S.W.3d at 305.