

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00391-CR

---

Fernando Martinez, Jr., Appellant

v.

The State of Texas, Appellee

---

On Appeal from the 399th District Court
Bexar County, Texas
Trial Court No. DC2023CR4417

---

## MEMORANDUM OPINION [1]

Appellant, Fernando Martinez, Jr. appeals his conviction for evading arrest or detention with a vehicle. In a single issue, he questions whether a peace officer lawfully initiated a traffic stop for his incorrect display of a front license plate. Finding no reversible error, we affirm.

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 6, 2023, Bexar County Sheriff's Officer Joseph Garza was on duty near Highway 90 and West Military in Bexar County, Texas. Garza noticed a white Mercedes parked at a gas station. The vehicle lacked a front license plate and appeared to have excessive window tinting—both violations of Texas traffic laws. Martinez was later identified as the operator and sole occupant of the Mercedes. As Martinez pulled out of the gas station onto the access road, Garza got behind him, and initiated a traffic stop by turning on his overhead lights and siren. Martinez activated his vehicle's hazard lights, and after making one turn, pulled into a QT convenience store parking lot. Martinez stopped briefly in front of the store but then continued through the parking lot, even after Garza instructed him to pull into a parking space over his PA system.

Martinez exited the QT parking lot onto a side street where it stopped briefly but then pulled up to South Military Drive. He then sped off turning into oncoming traffic for several hundred feet eventually maneuvering onto the Highway 90 access road. Martinez entered onto Highway 90, and as he did so, Garza saw him throw a bag out the window. The two vehicles, traveling at times over 100 miles per hour, weaved in and out of what at first was light traffic But soon Martinez came upon traffic backed up due to an accident ahead on the highway. Martinez moved to the shoulder and Garza continued to chase. By this time, Garza turned off his lights and siren, but he continued to follow Martinez. As they approached the accident blocking lanes, Martinez traveled between the lanes of stalled traffic. San Antonio Police officers and rescue workers were actively on scene. Driving through the area, Martinez nearly hit a TXDOT employee, did hit another car, and was finally stopped by a police officer who drew his service weapon and approached the driver's side door of Martinez's vehicle.

This sequence of events is largely undisputed and supported by the trial testimony of Garza, his supervisor who was parked in the QT parking lot at the time, and the San Antonio police officer who finally stopped Martinez. Garza's dash cam video also documented the entire episode.

Martinez testified in his own defense acknowledging that a police unit attempted to pull him over. He explained that he panicked and ran, stating: "I'm admitting that I fled." Martinez testified that he recalled making eye contact with Garza as he walked from the gas station to his vehicle. Garza was then stopped at a nearby side street. He found it "odd" that Garza had paused for 15-20 seconds to observe him. He noticed that Garza then pulled into the adjacent hotel parking lot. Martinez acknowledged that Garza pulled behind him and turned on the unit's lights as he left the gas station. He stated that he turned on his hazard lights and looked for a place to safely stop. He pulled into the QT station and heard the "bullhorn" telling him to pull into a parking space, which he thought was unusual. Martinez explained that he was "trying to make it to where a normal stop would be."

Martinez testified the entire sequence made him nervous and intimidated. He testified that Garza observed him "head to toe" and he thought Garza was trying to identify him. He testified that "it didn't help" that his own outfit was "flamboyant," he was wearing an expensive watch, and had visible tattoos. He testified that he felt he was profiled. Martinez admitted he fled, but he stated he did so because he was scared and nervous, he did not know what was in the vehicle and added that he had just recently completed a five-year prison sentence. He felt this was not a "normal" stop. He also based his fear on his lifetime of experiences with police and prior stops where officers pulled guns on him. He claimed to have made "a rash decision, not a conscious decision."

Martinez agreed that his front license plate was inside his front windshield, stating he did not know this was a violation of Texas law. He also claimed his vehicle came to a complete stop

3

as evidenced by the dash cam video—once at the QT store parking lot and once on a side street next to the parking lot. He stated that when Garza did not then immediately exit the police cruiser, he claimed to have acted out of "panic," "fear," and his "fight or flight" instinct.

The jury was instructed that a person commits an evading-arrest-or-detention offense if the State proves beyond a reasonable doubt that the accused intentionally flees from a person he knows is a peace officer who is attempting lawfully to arrest or detain him, and that he used a vehicle to do so. *See* Tex. Penal Code § 38.04(a), (b)(1)(B). The charge included statutory definitions for intentional and knowing conduct.[2] The charge, unobjected to by Martinez, contained no instructions on what constitutes a lawful arrest or detention. In closing argument, Martinez's counsel challenged whether he *believed* that the officer was making a lawful stop. From this premise, his counsel urged that Martinez lacked the intent required to commit the crime. The jury returned a verdict of guilty. Based on his election, the trial court, after accepting evidence of Martinez's prior felony conviction for sexual assault of a child, sentenced him to five years' confinement and a $1,000 fine.

## II. DISCUSSION

Martinez's sole issue on appeal asks: "[w]hether the stop of Appellant's vehicle began based on an issue which was not a legal violation, the front license plate displayed incorrectly."

### A. Martinez's arguments on appeal

In assigning error, Martinez contests the legal authority for the initiation of a traffic stop of his vehicle. In briefing, however, he concedes the assigned error while reformulating his complaint. He first acknowledges the line of cases holding that police officers may stop and detain

---

[2] "A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct." Tex. Penal Code § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id.* at § 6.03(b).

a person if they have a reasonable suspicion that a traffic violation is in progress or has been committed. *See e.g. Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (en banc). Thus, a lawful roadside detention begins when a vehicle is pulled over for investigation of a traffic violation. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) (quoting *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013)). The reasonable suspicion standard requires only "some minimal level of objective justification" for the stop. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). This objective inquiry disregards the subjective intent of the officer and looks, instead, to whether an objectively justifiable basis for the detention existed. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

Martinez cites the Texas law that requires the display of a front license plate mounted on the exterior front of a vehicle. The Transportation Code makes it an offense for a person to operate a vehicle on a public highway if "during a registration period, a motor vehicle . . . does not display two license plates that . . . comply with department rules regarding the placement of license plates." Tex. Transp. Code § 504.943(a)(2). The department rules, found in the Administrative Code, provide that those two license plates must be "clearly visible, readable, and legible" and must be displayed "one at the *exterior front* and one at the exterior rear of the vehicle that are securely fastened at the exterior front and rear of the vehicle in an upright horizontal position of not less than 12 inches from the ground, measuring from the bottom[.]" 43 Tex. Admin. Code § 217.27 (b)(1) (emphasis added). The record supports, and Martinez does not dispute, that his front license plate was displayed inside his front windshield, and not secured to the exterior front of his vehicle.

5

He further concedes the case law holding that an officer who sees the absence of a front license plate has an objective basis to initiate a lawful traffic stop. *See Guillory v. State*, 99 S.W.3d 735, 741 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (police officers after seeing absence of front license plate had reasonable suspicion to detain driver); *Rush v. State*, 549 S.W.3d 755, 758 (Tex. App.—Waco 2017, no pet.) (same).

Given these concessions, we overrule Martinez's presented issue. Nonetheless, we note that his argument pivots to a different claim: "Appellant had reason to believe that he was being profiled, and harm may likely occur due to the profiling . . . . He is a Hispanic male, in an expensive car, wearing expensive chains and a $6000 watch. It's rational for Appellant to be concerned about being profiled." Martinez supports this claim with a public policy argument that the risk of pretextual enforcement is large and creates "opportunities for arbitrary or discriminatory enforcement." He posits that Garza should have only given him a traffic ticket when he first noticed the vehicle in the gas station.

Based on Martinez's argument, we interpret his briefing as urging that a peace officer in this instance initiated an illegal, pretextual stop based on racial profiling. We next address his substantive argument.

## B. Preservation of error

The State asserts that Martinez's profiling argument is not preserved for our review. We agree.

Some courts recognize racial profiling as a potential defensive issue when the State claims its traffic stop was lawful. *See Carter v. State*, 419 S.W.3d 1, 8–9 (Tex. App.—Amarillo 2009), *rev'd on other grounds*, 309 S.W.3d 31 (Tex. Crim. App. 2010); *Moody v. State*, No. 13-08-00212-CR, 2009 WL 2605904, at *4 (Tex. App.—Corpus Christi-Edinburg, Aug. 26, 2009) (mem. op., not designated for publication). The rationale follows from the Code of Criminal Procedure that

6

prohibits peace officers from engaging in racial profiling. Tex. Code Crim. Proc. art. 2B.0052 ("A peace officer may not engage in racial profiling.").[3] And generally, evidence illegally obtained through racial profiling may not be used against a defendant in a criminal trial. *Carter*, 419 S.W.3d at 8–9 (citing Tex. Code Crim. Proc. art. 38.23(a) and *Pruneda v. State*, 104 S.W.3d 302, 305 (Tex. App.—Texarkana 2003, pet. ref'd)); *Moody*, 2009 WL 2605904, at *4.

But *Carter* further holds that "when a defendant asserts his arrest was based solely on racial profiling without probable cause or reasonable suspicion, the proper avenue for relief is a suppression motion." *Carter*, 419 S.W.3d at 8–9 (citing *Ex parte Brooks*, 97 S.W.3d 639, 640 (Tex. App.—Waco 2002, no pet.)). Assuming without deciding that profiling could have been a viable defensive issue here, it was never properly raised. Our record contains a pretrial suppression motion (which does not specifically raise a profiling claim), but it was never set for hearing. The record does not show the trial court was ever asked to decide the issue.

Moreover, at trial, Martinez raised no objection to evidence based on racial profiling. In fact, the only time Martinez testified to his belief that he was being "profiled" was in describing that he was driving a Mercedes vehicle, wearing an expensive watch, wearing chains, and dressed in a "very nice outfit." Also, the jury was not given any instruction allowing it to decide the import, if any, of racial profiling on the legality of the stop.

To preserve a complaint for review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if it is not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App.

---

[3] The statute defines racial profiling as a "law enforcement-initiated action based on an individual's race, ethnicity, or national origin rather than on the individual's behavior or on information identifying the individual as having engaged in criminal activity." Tex. Code Crim. Proc. art. 2B.0051.

2009). "A motion to suppress is a specialized objection regarding the admissibility of evidence; and suppression is the proper remedy when evidence is illegally obtained in violation of the defendant's rights." *Carter*, 419 S.W.3d at 8 n.6. And a defendant must obtain an adverse ruling from the trial court on a motion to suppress to preserve error. Tex. R. App. P. 33.1(a)(2); *Nelson v. State*, 626 S.W.2d 535, 535–56 (Tex. Crim. App. [Panel Op.] 1981) (providing that where written motions to suppress "lay dormant" without hearing or decision, oral suppression motion made after evidence admitted was untimely and did not preserve error); *Bollinger v. State*, 224 S.W.3d 768, 778 (Tex. App.—Eastland 2007, pet. ref'd) (defendant who failed to obtain ruling on three pretrial motions to suppress failed to preserve error); *Gonzalez v. State*, No. 08-14-00203-CR, 2017 WL 2464691, at *5 (Tex. App.—El Paso June 7, 2017, no pet.) (not designated for publication) (same, collecting cases).

Very few errors may be raised for the first time on appeal. Litigants' rights usually fall into three categories: (1) systemic requirements and prohibitions, (2) waivable-only rights, and (3) and forfeitable rights. *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993) (en banc) *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App.1997) (en banc). Only the first two categories of rights may be raised for the first time on appeal. *Proenza v. State*, 541 S.W.3d 786, 798 (Tex. Crim. App. 2017). "All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong." *Marin*, 851 S.W.2d at 279.

Martinez presents no authority providing that profiling in this context is an absolute or waivable-only right and we have found none.[4] Analogous race-based claims have required timely objection to preserve error. *See Irsan v. State*, 708 S.W.3d 584, 600, 603 (Tex. Crim. App. 2025) (findings complaints concerning Islamophobic jury arguments required timely objection), *cert. denied*, 223 L. Ed. 2d 579 (Jan. 26, 2026); *Castroaguilar v. State*, No. 05-25-00024, 2026 WL

---

[4] The State raised forfeiture of this issue in its Brief on the Merits. Martinez did not file a Reply Brief.

448826, at *5 (Tex. App.—Dallas Feb. 17, 2026, no pet.) (mem. op., not designated for publication) (rejecting claim that racial references in phone calls raised *Marin* I or *Marin* II error). We decline to resolve in the first instance the legal significance or factual basis of Martinez's profiling claim.

Because the issue raised in Martinez's brief wase not preserved below, we decline to address it on the merits and overrule the same.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. PALAFOX, Justice

May 15, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

9